COMMONWEALTH vs. MARVIN MOBLEY.

Suffolk.   February 2, 1976. — March 12, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Identification. Evidence, On cross-examination. Grand Jury.*

Where the police, on the day following an armed robbery, showed a witness, who had viewed the robber under bright lights for three to six minutes during the commission of the crime, a series of photographs, one of which depicted the defendant wearing a hat similar to a hat worn by the robber while the others depicted bareheaded persons, and where the witness, after identifying the defendant was shown pictures of the defendant participating in an unrelated armed robbery and again identified him, the photographic identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [895-897]

At the trial of a black male for armed robbery, it was not an abuse of discretion for the trial judge to exclude a question on cross-examination as to whether a witness had more or less difficulty distinguishing between black males than between white males where the witness had previously answered another question that he had no difficulty distinguishing between black males. [897]

At the trial of an indictment returned before the decision in *Taylor* v. *Louisiana*, 419 U.S. 522 (1975), there was no error in the refusal of the trial judge to dismiss the indictment on the ground that there was discrimination against women in the manner in which the grand jury were selected. [897]

INDICTMENT found and returned in the Superior Court on February 6, 1974.

A pre-trial motion to suppress evidence was heard by *Roy*, J., and the case was tried before him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Peter Larkowich* for the defendant.

*Richard A. Hannaway,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.    The defendant was convicted of the crime of armed robbery after a jury trial in the Superior Court, and was sentenced to a term of six to fifteen years at the Massachusetts Correctional Institution at Walpole. In this appeal, which is brought under G. L. c. 278, §§ 33A-33G, the defendant asserts that pre-trial identification procedures were so unconstitutionally suggestive as to require the exclusion of subsequent in-court identification by the robbery victim.    The Superior Court judge denied the defendant's motion to suppress the out-of-court and in-court identification testimony, and the defendant excepted.    He also claims error in the exclusion of a question addressed by defense counsel to a witness in cross-examination, and in intentional underinclusion of women in the grand jury which returned the indictment against him.    We conclude that there was no error.

The facts presented at the hearing on the motion to suppress the identification testimony were as follows.    At about 4:15 P.M., November 28, 1973, a black male, later identified as the defendant, walked into the office area of the Burger King restaurant on Brighton Avenue in Allston, where the manager, Jeffrey M. Weston, and his assistant, Jerry Russeau, were both sitting at a desk working.    The office area consisted of a small room, approximately eight feet by twelve feet, situated at the rear of the dining room area of the restaurant.

The robber pointed a gun at Weston and Russeau and demanded money.    Weston replied that he did not have any money in the office.    The robber then pushed Russeau's head down onto the desk and held the gun at Russeau's neck.    At that time, the robber was two to three feet away from Weston.

Both men protested that there was no money in the back office, but that it was in the front room.    The robber then threw a brown paper bag on the desk,

ordered Weston to get the money, and threatened to blow off Russeau's head if he (Weston) "pull[ed] anything."

Weston removed all the money from the safe and the cash drawer in the front room. When he returned he found Russeau lying face down on the floor outside the office area with the robber bending over him. The robber remained bent over throughout the entire episode, and was, again, approximately two to three feet away from Weston. The latter handed the money to the robber. The robber asked whether that was all the money they had. Weston told him there was some rolled coin left in the office if he wanted it. The robber said he wanted it, at which point the manager went into the rear office, returning with about $200 in rolled coin, which he handed over to the robber. Weston was then told to lie down on the floor, and the robber fled through the rear door of the building.

The area where the robbery occurred had overhead fluorescent lights and the lighting was excellent. The robbery itself took approximately six to nine minutes. Weston testified that he clearly observed the robber for three to six minutes.

Weston described the robber to the police as a black male in his late teens or early twenties, approximately five feet nine inches tall, wearing khaki or light-colored pants, a blue knit ski cap ("stocking cap") and a maroon nylon jacket with some writing on it.

The next morning, November 29, 1973, Officer Manfra telephoned Weston and told him he wanted to show him some photographs to see whether the robber was in the group. The officer, along with other officers, came to the restaurant. He placed about six pictures on a table. Weston thumbed through them once or twice. He selected only one picture, that of the defendant, identifying him as the robber. Although this was the only picture in the group of a male wearing a ski cap, the rest being bareheaded, Weston could not recall which figure in the

six pictures wore the ski hat since he did not focus on that detail in particular.

The police then gave Weston another group of pictures showing an unrelated armed robbery being committed. Weston again selected a picture of the defendant. None of the officers present engaged in any conversation about the pictures shown during this identification.

The defendant at this time had not been arrested, questioned, or suspected by the police of having committed this crime. He was arrested shortly after the identifications.

At a probable cause hearing held at the Municipal Court of the Brighton District three to four weeks after the robbery, Weston saw the defendant in the dock. Weston positively identified the defendant as the robber. No suggestions about the identification of the defendant were made to Weston by anyone at this hearing.

1. There was no error in the denial of the defendant's motion to suppress the identification testimony (both in-court and out-of-court) of the witness Weston. It is clear from the judge's findings of fact at the hearing on the motion to suppress evidence, all of which we conclude were warranted on the evidence, that he correctly evaluated the photographic identification procedures in light of the totality of circumstances in the case. *Simmons* v. *United States*, 390 U.S. 377, 383-384 (1968). The judge concluded that there was "nothing whatsoever by way of tainted suggestiveness in the out-of-court photographic identification." This determination in a practical sense was a ruling which disclosed an analysis sufficient to meet the requirements of the *Simmons* case, viz. that photographic identification procedures are constitutionally invalid if the procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384.

In his findings the judge placed appropriate emphasis on several particulars, and in doing so applied analysis of the facts as recommended in *United States* v. *Wade*, 388

U.S. 218, 241 (1967), as follows: (1) the extent of the witness's opportunity to view the robber; (2) the general description given by the witness of the robber;[1] (3) the absence of any error in either failing to identify the defendant as the robber or in identifying some other person as the robber; (4) the lack of evidence that the police had made any suggestions to the witness concerning identification of the defendant; and (5) the relatively short period of time which elapsed between the commission of the crime and the identification of the photographs. It is clear that analysis of the facts by these criteria was supportive of the judge's ruling. The extent of the opportunity to see the robber at the time of the crime, which has been called the most important factor (*Commonwealth* v. *Ross,* 361 Mass. 665, 671 [1972]), was properly emphasized by the judge in his findings. The judge also considered in his determination the fact that the defendant had not been under arrest at the time of Weston's identification.

The defendant points to certain of the facts as establishing unconstitutionally suggestive pre-trial procedures. For example, he cites the fact that the group of pictures viewed by the witness showed only the defendant wearing a ski cap, and the additional fact that the robber wore a ski cap. None of the other subjects wore a hat. However, whatever support these facts might afford to the defendant's argument is considerably neutralized by the witness's unequivocal testimony at the pre-trial hearing that (in substance) he was not looking for a hat when he examined the pictures.

The showing of pictures of the defendant participating in an unrelated armed robbery, while undoubtedly prejudicial in some circumstances, occurred here only after the

---

[1] The defendant fitted this description, so far as the record shows, except that he described himself at the trial as a little over six feet one inch tall, whereas Weston had originally described him as approximately five feet nine inches tall.

witness had made an unequivocal identification of the defendant from a selection of six pictures of reasonably similar men. Again, this sequence of events makes the police procedures here fall far short of the impermissibly suggestive procedures proscribed by the *Simmons* case.

Since the judge found, and we conclude warrantably, that the pre-trial identification procedures were not constitutionally invalid, there was no necessity for him to consider, as the defendant now argues, whether the in-court identification was, by clear and convincing evidence,[2] based on observations of the suspect independent from the challenged pre-trial procedures.

2. There was no error in exclusion by the judge of a question propounded by defense counsel as to whether the witness Weston had more or less difficulty distinguishing between black males than between white males. The witness had just previously answered another question, in substance, that he had no difficulty distinguishing between black males. The exclusion of the question was in the judge's discretion. See *Commonwealth* v. *Carroll,* 360 Mass. 580, 589 (1971).

3. There was no error in the refusal of the judge to dismiss the indictment on the ground that there was discrimination against women in the manner in which the grand jury were selected. The indictment here was returned before *Taylor* v. *Louisiana,* 419 U.S. 522 (1975), was decided and the rule of that case need not be applied retroactively. *Daniel* v. *Louisiana,* 420 U.S. 31 (1975). See *Commonwealth* v. *Daggett, ante,* 790 (1976), wherein we declined to apply the *Taylor* principle

---

[2] As in *Commonwealth* v. *Botelho, ante,* 860 (1976), the parties here have assumed that a burden rests on the Commonwealth to prove an independent basis for the identification by clear and convincing evidence whenever impermissibly suggestive pre-trial procedures are shown. We do not reach this issue here, and need not consider the implications of *Neil* v. *Biggers,* 409 U.S. 188 (1972), and other cases. See the discussion of the opposing points of view in the *Botelho* opinion.

retroactively on facts substantially the same as presented in this case.

*Judgment affirmed.*