COMMONWEALTH vs. ROBERT MELVIN.

Middlesex.    October 6, 1986. — February 12, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Identification. Due Process of Law*, Identification.

In a larceny case where the victim, on the basis of a photographic array shown him by police shortly after the incident, identified the defendant as the intruder who had entered his bedroom during early morning hours, had been plainly visible for an appreciable time, and had been observed to injure his right shoulder in jumping from a balcony to make his escape, and where the judge was warranted in finding that the identification had been based solely on the victim's observations at the time of the incident, the circumstances that the defendant's photograph depicted him with his left shoulder in a sling and that his was the only photograph showing a person wearing a sling, did not render the identification procedure impermissibly suggestive as matter of law or taint the victim's subsequent identification of the defendant, and any suggestiveness went only to the weight to be accorded the initial identification, and not to its admissibility. [205-208]

INDICTMENTS found and returned in the Superior Court Department on May 25, 1982.

The cases were tried before *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Ellen Caulo*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After trial by jury, the defendant was convicted of breaking and entering a building in the daytime with intent to commit a felony therein, G. L. c. 266, § 17 (1984 ed.), and larceny of property worth more than one hundred dollars, G. L. c. 266, § 30 (1984 ed.). This court allowed the defend-

ant's application for direct appellate review.[1] We affirm the convictions but remand the matter for resentencing.[2]

On appeal, the only issue is the admission of identification evidence. Prior to trial, the defendant filed a motion to suppress pretrial identifications consisting of (1) an identification by the victim as a result of a photographic array shown to him a few hours after the incident; (2) an identification by the victim as a result of a second photographic array shown to him one day after the incident; (3) an identification by the victim at a probable cause hearing in a District Court; and (4) the anticipated in-court identification at trial. After a hearing, the judge denied the defendant's motion to suppress in its entirety, without express findings of fact. The defendant was convicted, and he appealed. After oral argument, we remanded the case to permit the judge to make findings of fact on the motion to suppress. The judge promptly made such findings. We conclude that the judge's ruling denying the motion to suppress is correct.

We review the facts found by the judge, supplemented where necessary by some uncontested testimony at the hearing on the motion to suppress. On August 2, 1981, at approximately 5:40 A.M., the victim awoke and saw a man standing at his bureau. The intruder had his back to the victim and the two men were approximately seven feet apart. Although the hour was early, the judge found that this was the victim's normal waking time. The bedroom was bright because the sun was shining in the window toward the intruder.

The victim observed that the intruder was a white male and was approximately six feet, one or two inches tall. The intruder

---

[1] On October 30, 1986, the matter was remanded to the Superior Court for findings by the trial judge. The judge filed his findings on November 28, 1986.

[2] On the conviction of breaking and entering a building in the daytime, the defendant was sentenced to a term of twelve years at M.C.I., Concord. General Laws c. 266, § 17, provides that the punishment for the crime shall be "imprisonment in the State prison for not more than ten years." The Commonwealth concedes the sentence is illegal and agrees that we must remand the matter to the trial judge for resentencing. There is no explanation as to why the parties did not ask the judge to correct the sentence as soon as the illegality of the sentence became known rather than await the appeal.

was wearing a T-shirt, blue jeans, a black vest, and had two wallets in his rear pockets hooked to his belt with chains. The victim leapt out of bed and uttered something, at which point the intruder turned so that he and the victim stood facing one another. The victim had no difficulty seeing the intruder's face. The victim noted that the intruder had medium brown hair and a mustache. The two men stared at each other for a few seconds and the intruder ran down the hall to a balcony. The victim followed the intruder down the hall. The intruder jumped off the balcony to the ground three stories below. The victim saw the intruder land on his right shoulder, get up, and run away. The victim called the police shortly after the incident. The victim gave the police a description of the intruder.

Because of the possibility that the intruder had been injured as a result of his leap from the balcony, the police began to check area medical facilities for individuals fitting the description given by the victim. Later the same day, an officer from the Hudson police department went to a regional medical center and interviewed a patient fitting the victim's description of the intruder. The patient produced a Massachusetts General Hospital card as identification which bore the name "Robert King." King gave his address as Spruce Street in Marlborough. King was being treated for an injury to his left shoulder.[3] King said that he had injured his shoulder that morning emptying rubbish. King's arm was placed in a sling. The officer then requested King to follow him in his own car to the police station. King complied with this request. King was photographed while he was wearing the sling.

This photograph of King with his arm in a sling was placed in an array of five other photographs. Except for the sling, the officer testified that all of the photographs in the array were similar, depicting men of the same height, with facial hair. This array was taken to the victim's home and given to the victim to see if he could identify any of the photographed individuals. The victim selected King's photograph. The judge found that the victim selected the photograph of King, not

---

[3] The victim testified that the intruder landed on his right side.

because of the sling, but because of his vivid memory of the intruder.[4]

As a result of the victim's identification of the defendant's photograph, the police went to the address King had given them. There was no such address. After further investigation, the police discovered that King was actually the defendant, Robert Melvin.[5] The police obtained an arrest warrant and arrested him at his home in Ashland the day after the incident.

After his arrest, the defendant was photographed again without the sling. The police arranged a second array of photographs which included a photograph of the defendant, the five photographs from the first array and three additional photographs. The victim selected the photograph of the defendant, stating that he was certain the individual in the photograph was the intruder.

The victim identified the defendant in court on three occasions — at the probable cause hearing, at the suppression hearing, and at the trial. At the suppression hearing, the judge questioned the victim about the identification. The victim told the judge that the sling played no part in his original identification. The victim stated that the identification was based solely on his observation from the morning of the incident. The judge found that the "identifications were certain and most reliable."

In reviewing a judge's findings in identification cases, we accept the judge's subsidiary findings of fact in the absence of clear error. *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). Moreover, the determination of the weight of the evidence and the credibility of the witnesses is a function of the judge who heard the evidence, and not of this court. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). But, because the judge's ultimate conclusions of law on identification issues may be of constitutional dimensions, this court must undertake

---

[4] The defendant asserts that the victim's testimony concerning this identification is "unconvincing." Credibility, however, is for the trial judge, not this court. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980).

[5] The defendant allegedly stated that he used a false name because he sought to secure some drugs for his wife.

an independent review of the correctness of the judge's application of constitutional principles to the facts found. *Moon, supra.*

We are guided in our evaluation of identification evidence by the principles outlined in *Commonwealth* v. *Botelho,* 369 Mass. 860 (1976). Under the law of this Commonwealth, a criminal defendant has the burden to prove, by a preponderance of the evidence, that the procedures involved in the showing of the photographic arrays were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and thus were offensive to due process. *Simmons* v. *United States,* 390 U.S. 377, 384 (1968). See, e.g., *Correia, supra* at 78; *Commonwealth* v. *Venios,* 378 Mass. 24, 27 (1979); *Botelho, supra* at 866. In determining whether an identification procedure is impermissibly suggestive, a judge must assess the totality of the circumstances attending the identification. *Id.* at 867. *Stovall* v. *Denno,* 388 U.S. 293, 302 (1967). If the defendant succeeds in showing that the identification resulted from an impermissibly suggestive confrontation, the evidence must be excluded at the trial. If the Commonwealth seeks to introduce other identification evidence, the burden shifts to the Commonwealth to prove by clear and convincing evidence that the proffered identification has a source independent from the suggestive confrontation.[6] *Correia, supra; Botelho, supra* at 868.

At the time of the first photographic array, the victim had given the police a sufficiently detailed description of the intruder and the incident so that the police immediately were able to focus their investigation. On finding a person who fit the description given by the victim, the police chose not to

---

[6] Because the case falls within the requirements of *Botelho,* we leave open the question whether, in the future, we shall follow *Manson* v. *Brathwaite,* 432 U.S. 98 (1977), which permits the use of identification evidence resulting from suggestive confrontations if certain indicia of reliability are present. See, e.g., *Commonwealth* v. *Howell,* 394 Mass. 654, 660 (1985); *Commonwealth* v. *Venios,* 378 Mass. 24, 27 (1979); *Moon, supra* at 759.

take this individual in custody,[7] selecting the less intrusive alternative of taking a photograph and preparing an array for purposes of identification. Moreover, the prompt action of the police in arranging this identification allowed the victim to view the suspect while his recollection was still fresh. See, e.g., *Commonwealth* v. *Harris*, 395 Mass. 296, 299 (1985); *Commonwealth* v. *Howell*, 394 Mass. 654, 660 (1985).

In preparing the array, the police testified that they sought similar-looking individuals. The police, however, were unable to find any other photographs of a person wearing a sling.[8] Although it would have been better practice to have attempted to cover or hide the sling, the presence of the sling alone does not render the photograph unnecessarily suggestive as a matter of law.

The judge found that, in showing the array to the victim, the police gave the photographs to the victim and asked him if he recognized any of the individuals pictured. The officer did not coach the victim in any way nor did he suggest to the victim that the photograph of the defendant was that of the suspect.[9]

---

[7] In a long line of cases, this court frequently has held that there is no per se violation of due process rights when the police promptly after a crime arrange a one-on-one showup between the witness and the suspect. See, e.g., *Commonwealth* v. *Harris*, 395 Mass. 296, 299 (1985); *Commonwealth* v. *Howell*, 394 Mass. 654, 660 (1985); *Commonwealth* v. *Bowden*, 379 Mass. 472, 478-479 (1980); *Commonwealth* v. *Storey*, 378 Mass. 312, 316-318 (1979), cert. denied, 446 U.S. 955 (1980); *Commonwealth* v. *Barnett*, 371 Mass. 87 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Bumpus*, 354 Mass. 494 (1968), cert. denied, 393 U.S. 1034 (1969). If the police had arranged a showup here, instead of the photographic array, assuming there were no special elements of unfairness, the showup probably would have fallen within these cases and would have been permissible. *Storey, supra.*

[8] This photograph with the defendant's arm in a sling has been lost. Neither the trial court nor this court had the benefit of the photograph. We have reviewed the other photographs shown to the victim in both arrays and we conclude that the arrays were fairly constructed. All the photographs show mustached men of approximately the same height, build, and hair color.

[9] The evidence was conflicting as to whether the officer stated that the police had a suspect at the time the victim was shown the first photographic array. The victim stated that the officer simply asked him to look through the photographs to see if he recognized anyone. The officer, on the other

Compare *Moon, supra* at 758; *State* v. *LeClair,* 118 N.H. 214, 216-217 (1978), with *Commonwealth* v. *Vasquez,* 11 Mass. App. Ct. 261, 266 (1981). The victim examined each photograph with care. Although the victim testified that his attention was drawn to the photograph with the arm in a sling, he went through the photographs twice to identify "the individual, not the sling."[10] The victim further said that because the photographs were shown to him so soon after the incident, he had a very vivid memory of the assailant. In accordance with this testimony, the judge found that the victim identified the defendant based solely on his observations at the time of the incident. Accord *Commonwealth* v. *Clark,* 378 Mass. 392, 401 (1979); *Commonwealth* v. *Kostka,* 370 Mass. 516, 524 (1976). While this identification procedure may have had an element of suggestiveness, we agree with the judge that this identification, in the totality of the circumstances, was not so unnecessarily suggestive and conducive to misidentification as to deny the defendant due process of law. See *Commonwealth* v. *Dickerson,* 372 Mass. 783, 791 (1977).

---

hand, testified that he advised the victim that the police had a suspect prior to giving the victim the photographs. The judge made no findings on this issue. Even if we assume that the officer did advise the victim that they had a suspect, that does not make any subsequent identifications unduly suggestive. The police are simply stating the obvious purpose of showing the array of photographs to the witness. See *Commonwealth* v. *Napolitano,* 378 Mass. 599, 603 n.6 (1979); *Commonwealth* v. *Coy,* 10 Mass. App. Ct. 367, 373 (1980).

[10] The presence of the sling in the photograph seems to have had no effect on the identification. First, as was noted at oral argument, according to the hospital records, the sling and the injured shoulder appear to have been on the left side, but the victim testified that the intruder fell on his right side. Moreover, the victim testified that he reviewed the photographs twice carefully to make sure he made the identification "facially." Although we disapprove of an array of photographs which distinguishes one suspect from all the others on the basis of some physical characteristic, we have sustained numerous such identifications when it is clear that the victim did not select the photograph on that basis. See *Commonwealth* v. *Clark,* 378 Mass. 392, 399-400 (1979); *Commonwealth* v. *Napolitano, supra* at 602; *Commonwealth* v. *Kostka,* 370 Mass. 516, 524 (1976); *Commonwealth* v. *Mobley,* 369 Mass. 892, 896 (1976). "The fact that the defendant's photograph may have differed in some respects from others . . . is not sufficient to establish that the array was suggestive." *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 167 (1980).

Any weakness in the identification did not rise to the level of a substantial likelihood of misidentification. Thus it was constitutionally permissible to admit evidence of the identification. The degree of suggestiveness present in this identification went to the weight, not the admissibility, of this evidence and it is for the jury to assess the infirmities of this identification. *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 308 (1979). *Commonwealth* v. *Bumpus*, 362 Mass. 672 (1972), judgment vacated on other grounds, 411 U.S. 945 (1973), aff'd on reh'g, 365 Mass. 66 (1974). Because this first pretrial identification was not shown to be unnecessarily suggestive, no taint attached to the subsequent out-of-court and in-court identifications.

As to the conviction of larceny of property worth more than one hundred dollars, the judgment is affirmed. As to the conviction of breaking and entering a building in the daytime, the verdict shall stand but the matter is remanded to the Superior Court for resentencing. See note 2, *supra*.

*Judgments affirmed.*