COMMONWEALTH *vs.* ELMER JOHNSON. June 25, 1987. *Robbery. Identification. Evidence,* Identification. *Practice, Criminal,* Instructions to jury, Request by jury, Argument by prosecutor.

The defendant was convicted by a jury in the Superior Court on two indictments, each of which charged him with robbery of a person sixty-five

---

years of age or older. The charges stemmed from brutal assaults committed by two men upon an elderly woman and her husband. The defendant was sentenced to concurrent terms of life imprisonment. Represented by new counsel on appeal, the defendant argues (1) that the judge erred in denying his motion to suppress the female victim's out-of-court and in-court identifications of him, and in denying his motion for required findings of not guilty; (2) that the judge answered a question from the jury in a way which unfairly affected their consideration of the case; and (3) that the prosecutor's closing argument contained prejudicial improprieties. We affirm the convictions.

1. The record supports the judge's findings of fact on the motion to suppress. See *Commonwealth* v. *Moon,* 380 Mass. 751, 755-756 (1980). The evidence indicates that shortly after the commission of the crimes, the victims were shown seven photographs of young males by Detective Edward J. Barrett of the Boston police. The array was a fair selection. Detective Barrett told the victims only that he had some photographs to show them. He did not indicate that the defendant's picture was in the array or that the defendant had been arrested after he had been stopped in the victim's car. The female victim's identification of the defendant's photograph was firm and positive.[1]

Later, Detective Barrett showed the victims a second array which contained the defendant's photograph and a photograph of the defendant's suspected confederate.[2] These two photographs had been obtained from the Brookline police department. The photographs indicated that they were from Brookline police files and that they had been taken on the date of the arrests. They did not have a height scale in the background. In the respects described, the two photographs differed from the other photographs in the array which had been obtained from the Boston police department files. The female victim again identified the defendant.

The judge could properly find that these differences did not make the second array unduly suggestive. See *Commonwealth* v. *Clark,* 378 Mass. 392, 398-401 (1979); *Commonwealth* v. *Melvin,* 399 Mass. 201, 203-204, 206-207 (1987); *Commonwealth* v. *Howard,* 8 Mass. App. Ct. 318, 324 & n.7 (1979). He could also find that the female victim had selected the defendant's photograph from the second array based upon her memory of his features at the time the crimes were committed. (As she put it, "I'd

---

[1] The victims had been separated by the robbers. The female victim saw only the robber who attacked her, whom she identified as the defendant, while her husband saw only the robber who attacked him. Only the defendant's photograph appeared in the first array.

[2] The second array contained larger photographs of the two suspects and were in color. Detective Barrett apparently hoped that one of the victims could identify the second robber. The female victim could not identify the robber who attacked her husband. Her husband was unable to identify his attacker. As a result, the charges against the second man were dismissed, and the case proceeded against the defendant on the strength of the female victim's positive identification.

never forget that face as long as I lived".) There is no support in the record for the defendant's contention that Detective Barrett (who was the female victim's brother) made nonverbal communications to his sister to influence her selections from the two arrays. Based upon the evidence he found credible, the judge properly concluded that the challenged identifications were not offensive to due process. See *Commonwealth* v. *Melvin,* 399 Mass. at 205.

2. The female victim's positive identifications of the defendant as her assailant; the second robber's reference to his confederate as "Elmo", a name similar to the defendant's first name; the defendant's apprehension six hours after the crimes driving the victims' automobile; and the defendant's attempt to flee from the Brookline police, involving them in a high speed chase before he was apprehended, constituted sufficient evidence to warrant submission of the case to the jury. See *Commonwealth* v. *Chatfield-Taylor,* 399 Mass. 1, 3-4 (1987). Any deficiencies in the Commonwealth's proof went to the weight of the evidence of guilt. The defendant's motion for required findings of not guilty on both charges was properly denied.

3. During their deliberations, the jury asked: "[I]s it possible for us . . . to look over the transcript?" The judge responded to the request at some length by: (a) explaining that the transcript was not available; (b) outlining the jury's function with respect to evaluating the evidence; and (c) stating the factual issues to be resolved in the case with some attention to the circumstances of the robberies. The defendant's trial counsel made an objection to the latter part of the instruction — as he put it, "I'd object, your Honor, to the running through of the evidence in the case . . . I don't think the [jury's] question really elicited that kind of an answer." It is now argued that the references to the factual issues prejudiced the defendant by "link[ing] uncontested evidence with disputed facts on which the case turned."

To the extent that the judge's response to the jury's request advised them of the reasons why a transcript could not be provided, it was proper. Also proper, as matter of discretion, was the judge's reinstruction of the jury on the subjects of how they should go about recollecting the evidence and discharging their function of deciding the facts. Somewhat troubling is the judge's lengthy summing up of the factual issues in the case in terms that may have tended to restate the circumstances of the robberies. *Pfeiffer* v. *Salas,* 360 Mass. 93, 99 (1971). It might have been better had the judge omitted the recapitulation, as the only disputed issue was the issue of identification. The portions of the judge's response which are now criticized were firmly linked to several admonitions to the jury that the Commonwealth had to establish all the elements of its case by proof beyond a reasonable doubt. Considering the response as whole, we conclude that the defendant has suffered no harm.

4. In his closing argument, the prosecutor made the following remarks:

."Now, some of you feel that when Detective Barrett learned what had occurred he was no doubt outraged, as I assume every person

in this courtroom, save the defendant at the bar, is outraged by the brutality of what occurred in this case."

The remarks are argued as constituting a basis for a new trial.

The remarks were improper. They suggest the prosecutor's belief in the defendant's guilt by stating that only the defendant was unconcerned by the crimes.

Should a new trial be ordered because of the misconduct? There was no objection to the remarks by the defendant's trial counsel. See *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 878-879 (1984). The argument is a relatively isolated part of a lengthy closing argument which is otherwise proper.[3] The judge did not directly point out in his final instructions that arguments of counsel are not evidence. But he did repeatedly emphasize in those instructions that the case had to be decided on the evidence only, and he clearly and accurately defined the presumption of innocence and the Commonwealth's burden of proof. Most important, the evidence of the defendant's guilt was very substantial. Applying the standards set forth in *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 (1987), and in *Commonwealth* v. *Person,* 400 Mass. 136, 142 (1987), we conclude that the prosecutor's error does not require reversal.

*Judgments affirmed.*

*Richard Abbott* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney (*Kevin J. Ross,* Assistant District Attorney, with him) for the Commonwealth.

---

[3] We have obtained a transcript of the missing two pages of the prosecutor's closing argument. We see nothing in that portion of the argument to support the defendant's contention that additional improper remarks were made by the prosecutor.