COMMONWEALTH vs. RONALD THORNLEY.

Norfolk. May 2, 1989. - November 16, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification. Evidence*, Identification. *Error*, Harmless.

Where the evidence at the hearing on a motion to suppress a photographic identification of a defendant demonstrated that the witnesses to a criminal assault selected the defendant's photograph from an array because the defendant's picture showed him wearing glasses, the identification procedure was held to be impermissibly suggestive. [98-101]

At the hearing on a motion to suppress in-court and out-of-court identifications of a defendant, the Commonwealth did not demonstrate that the lineup and courtroom identifications of the defendant were based on a source independent of the initial identification from an impermissibly suggestive photographic array, and the judge erred in admitting evidence at trial of the later identifications. [101]

At a criminal trial in which identification of the defendant was the main issue, the improper admission of evidence of in-court and out-of-court identifications of the defendant was not harmless error. [101-102]

INDICTMENTS found and returned in the Superior Court Department on May 4, 1983.

After review and remand by this court, 400 Mass. 355 (1987), additional findings were made by *Roger J. Donahue*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*Charles J. Hely*, Assistant District Attorney (*Stephanie Martin Glennon*, Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. In *Commonwealth* v. *Thornley*, 400 Mass. 355, 364 (1987) (*Thornley I*),[1] we remanded this matter to the Superior Court for "further analysis and findings of fact as to [a] photographic array." We asked the judge to determine whether the array was "sufficiently suggestive to constitute a deprivation of due process" pursuant to our opinion in *Commonwealth* v. *Botelho*, 369 Mass. 860 (1976), in accordance with the criteria set forth in *Simmons* v. *United States*, 390 U.S. 377, 384 (1968), and *United States* v. *Wade*, 388 U.S. 218, 241 (1967), and for reconsideration of the admissibility of the lineup identifications and the in-court identifications that followed the photographic array. *Thornley I, supra* at 363-364.

In his original findings the motion judge found that "the photo array . . . was only suggestive in that the defendant had glasses on. Otherwise, there was no suggestiveness." *Id.* at 363. He also found that no suggestiveness affected the identification procedures and ruled "that the Commonwealth had proved 'to a point beyond reasonable doubt' that the identifying witnesses were relying 'upon their view of the defendant on the night of the shooting.' " *Id.* On remand, without further hearing, the judge found that "the identifying witnesses had the opportunity to view the defendant for a considerable period of time" and that, although the defendant's glasses had become "a major issue," the identification of the defendant as Davis's assailant "was primarily an eyeball identification and was not *wholly dependent* on a photographic array nor on a composite sketch" (emphasis supplied).

The defendant appeals from the further findings claiming that (1) the original photographic identifications were impermissibly suggestive because both witnesses already had described the suspect as a man wearing glasses, the defendant's photograph was the only one showing a man with glasses, in a thirteen-photograph array, and both witnesses relied on the defendant's glasses in identifying him as the suspect; and (2)

---

[1]The facts are set forth in *Thornley I, supra* at 356-358.

the subsequent lineup and courtroom identifications should have been suppressed because the Commonwealth failed to prove by clear and convincing evidence that the subsequent identifications were based on a source independent of the suggestive array. We conclude that, based on the judge's findings, there must be a new trial.

1. *Suggestiveness of the photographic array.* "Photographic identification procedures are constitutionally invalid if the procedures were 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Thornley I, supra* at 364, quoting *Simmons, supra* at 384. A motion to suppress identification is governed by a two-part analysis as set forth in *Botelho, supra* at 866-868.[2] The burden rests initially on the defendant to show, by a preponderance of the evidence, that considering the totality of the circumstances attending it,[3] the identification was so im-

---

[2]The Commonwealth urges us to adopt *Manson v. Brathwaite*, 432 U.S. 98 (1977), which allows the use of an out-of-court identification even where suggestive procedures have been employed, provided certain indicia of reliability exist to ensure that the identification is correct. *Id.* at 109-114. The parties and the judge tried the case on the basis that *Botelho, supra* at 865-870, was the applicable law. "In these circumstances we shall not disregard the theory of law on which the parties proceeded at trial." *Commonwealth v. Thompson*, 382 Mass. 379, 382 (1981), and cases cited.

We note that the Commonwealth concedes that "[a]part from questions on burden of proof and quality of evidence, the *Brathwaite* focus on reliability factors and the likelihood of misidentification does not appear to be substantially different from the *Botelho* focus on whether there was an 'independent source' for the subsequent identification." The Commonwealth asks us to conclude that the opportunity to view during the crime was the independent source for identification. The judge did not make that finding of fact. Although the judge could have made such a finding, he did not do so. "[T]he responsibility of weighing credibility and finding fact is reposed in the trial court." *Commonwealth v. Haas*, 373 Mass. 545, 550 (1977). "[It] is inappropriate to ask us to reverse a judge's findings involving credibility, since he saw the witnesses and we did not." *Commonwealth v. Murphy*, 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring).

[3]At that point, the judge examines only the totality of the circumstances of the particular confrontation or identification itself and does not consider "the witness's entire connection with the case to determine whether the confrontation, although . . . unnecessarily suggestive, was nevertheless reliable, and therefore usable. . . ." *Botelho, supra* at 867. Here, for example, that the three witnesses had ample opportunity to view the two men at the

permissibly or unnecessarily suggestive and conducive to irreparable misidentification as to deprive the defendant of his due process rights. *Botelho, supra* at 366-368. *Simmons, supra* at 384. If the defendant makes this showing, then there may be a "per se" exclusion of that identification and the prosecution may not offer the identification in evidence. *Botelho, supra* at 366. Cf. *Commonwealth* v. *Melvin*, 399 Mass. 201, 207 n.10 (1987); *Commonwealth* v. *Mobley*, 369 Mass. 892, 894-895 (1976).

If the defendant sustains his burden, then, in order to introduce any subsequent identifications at trial, the Commonwealth must establish by clear and convincing evidence that the later identifications were not the product of the suggestive identification and were based on a source *independent* of the initial suggestive identification. *Botelho, supra* at 866-868.

In addition to his finding that "the eyeglasses of the defendant had become a major issue in this case," the judge also found that "the identifying witnesses did not spend much time in looking at photographs, but immediately picked out [the defendant's] photograph."[4] The findings that (1) the defendant's picture was the only one in the array with glasses; (2) the glasses were a "major issue"; and (3) the witnesses relied on the glasses in selecting the defendant's picture, warrant the conclusion that the witnesses identified

bar on the night in question has no bearing on the suggestiveness of the photographic array. See *id.* Rather, such evidence, external to the array, enters into the second stage of analysis, if reached, i.e., "whether the witness's ability to identify had an independent source." *Id.* at n.5.

[4]That the glasses were "a major issue" is confirmed by the descriptions the witnesses gave immediately following the incident. Both described the suspect as wearing glasses. The glasses worn by the defendant in the photographic identification had metal frames resembling the glasses described by the witnesses. In addition, as we observed in *Thornley I*, the composite sketch pictured the man's glasses as a "prominent feature" of his appearance. *Thornley I, supra* at 364. Further, both Davis and McCarthy said that they relied on the glasses as probably the most significant factor in making their selection of the defendant's photograph.

the defendant because the defendant's photograph showed him wearing glasses.[5]

"[W]e disapprove of an array of photographs which distinguishes one suspect from all the others on the basis of some physical characteristic." *Commonwealth* v. *Melvin*, 399 Mass. 201, 207 n.10 (1987). *Commonwealth* v. *Clark*, 378 Mass. 392, 400 (1979), quoting *United States* v. *Magnotti*, 454 F.2d 1140, 1142 (2d Cir. 1972) (photograph in an array may not "single out any distinguishing personal characteristics of defendant not possessed by the men in the other photographs"). Cf. *Simmons*, *supra* at 383 (even the best arrays involve "some danger [of] an incorrect identification" and this danger is increased where "the photograph of a single . . . individual . . . is in some way emphasized"). Nevertheless, identifications based on a suggestive array where only one subject is pictured with a distinctive feature are admissible if "it is clear that the [witness] did *not* select the photograph on that basis" (emphasis added). *Commonwealth* v. *Melvin*, *supra* at 207 n.10.[6] A witness's unequivocal testimony that he was *not* relying on a distinctive feature will considerably neutralize any suggestiveness in a photographic array. *Commonwealth* v. *Mobley*, 369 Mass. 892, 896 (1976). The instant case is distinguishable from *Mobley* and *Melvin* in that here, both witnesses unequivocally and explicitly said that the glasses were the significant factor that they relied on in their selection of the defendant's photograph. Thus, the suggestiveness in this case was not "considerably neutralized." *Mobley*, *supra* at 896. Because the witnesses selected the defendant's photograph on the basis of the

---

[5]This conclusion is supported by McCarthy's testimony that, in making his selection, he "picked the one with glasses."

[6]See *Commonwealth* v. *Melvin*, *supra* at 207 (involving array in which the victim specifically testified that the distinguishing feature — an arm sling — played "no part" in his selection of defendant's photograph, which was based "solely on his [original] observations" of the suspect). *Commonwealth* v. *Mobley*, 369 Mass. 892, 894-895 (1976) (involving an array in which the defendant's photo was the only one showing a ski hat, where the victim testified that he was *not* looking for a hat, did not focus on it, and could not even remember which photo had the hat).

glasses, we conclude that the array was "impermissibly" suggestive.

After a defendant proves that an initial identification was impermissibly suggestive, the Commonwealth bears the burden to prove, by clear and convincing evidence, that any subsequent identifications are based on an independent source. *Botelho, supra* at 867-868. As we noted in *Thornley I, supra* at 364, application of this test requires consideration of the five factors set forth in *Simmons* and *Wade*. The judge found that the "identification of the defendant was primarily an eyeball identification and was *not wholly dependent* on [the] photographic array" (emphasis added). A finding that the lineup and courtroom identifications were "not wholly dependent" on the suggestive array falls short of a determination that the identifications have an independent source. The judge's original finding that "the identifying witnesses were relying 'upon their view of the defendant on the night of the shooting' " does not aid the Commonwealth because the judge did not conclude that the witnesses were relying solely on their view of the defendant during the crime without regard to the photographic array. Indeed, this judge's determination that the identification of the defendant was not *wholly dependent* on the photographic array suggests otherwise. Because the Commonwealth did not convince the judge that the lineup and courtroom identification were based on a source independent of the suggestive photographic identification, it was error to admit that testimony.

2. *Harmless error*. We next consider whether the constitutional errors in the present case were harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U.S. 18, 24 (1967). *Commonwealth* v. *Kelleher*, 395 Mass. 821, 827 (1985). *Commonwealth* v. *Garcia*, 379 Mass. 422, 441 (1980). Whether an error is harmless depends on a host of factors, *Delaware* v. *Van Arsdall*, 475 U.S. 673, 684 (1986), including whether the "erroneously admitted evidence was 'merely cumulative' of evidence properly before the jury," *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987). The essential question is whether the error had or might have

had an effect on the jury and whether the error contributed to or might have contributed to the verdict. See *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978).

Applying the foregoing standard, we have no doubt that the errors here were not harmless to the defendant. The sole issue at trial was whether the defendant was mistakenly identified as the assailant. "The reasonable doubt standard is most crucial in cases where central facts (such as identity . . .) are at issue, and credibility plays a key role." *Commonwealth* v. *Garcia, supra* at 441. The evidence erroneously admitted went to the central issue in this case — the question of identification — and not to a collateral issue. See *Commonwealth* v. *Marini, supra* at 521.

The Commonwealth's case consisted of evidence regarding the original description, the "Identikit" composite sketch, the photographic array, the lineup, courtroom identifications, and testimony about the night in question. In an eyewitness identification case such as this, where the bulk of the trial was consumed by testimony regarding the improperly admitted identifications, we are unable to conclude that these identifications were "merely cumulative."

Accordingly, the judgments are reversed, the verdicts are set aside, and the case is remanded for a new trial.

*So ordered.*