NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12782

COMMONWEALTH vs. FRANCISCO MARRERO.

Middlesex.     December 6, 2019. - March 20, 2020.

Present: Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Firearms. Intent. Identification. Evidence, Intent, Firearm,
    Identification, Photograph.



Indictments found and returned in the Superior Court
Department on September 22, 2016.

A pretrial motion to suppress evidence was heard by Heidi
E. Brieger, J., and the cases were tried before Robert B.
Gordon, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Jon R. Maddox for the defendant.
Jamie Michael Charles, Assistant District Attorney, for the
Commonwealth.
David Rassoul Rangaviz, Committee for Public Counsel
Services, & Michelle Huynh, for Massachusetts Association of
Criminal Defense Lawyers, amicus curiae, submitted a brief.


GAZIANO, J. The defendant discharged a firearm twice into

the air. Police were unable to find the weapon or any

projectiles.  A Superior Court jury convicted the defendant of unlawful possession of a firearm, unlawful possession of a loaded firearm, and discharging a firearm within 500 feet of a building.  The defendant argues that there was insufficient evidence that he had knowledge of the physical characteristics of the firearm that subjected it to regulation, and accordingly, the convictions must be vacated.[1]  We conclude that, in order to establish unlawful possession of a firearm, the Commonwealth must prove only that the defendant knew the weapon was a firearm in the conventional sense of the word.  The defendant need not have had knowledge of the specific physical characteristics that made the weapon a firearm according to statute.

The defendant argues further that there was insufficient evidence to establish that the weapon did in fact meet the statutory definition of a firearm, and that two out-of-court identifications were impermissibly suggestive.  We conclude otherwise.  The evidence was sufficient for the jury to find that the weapon met the statutory definition of a firearm, and the identification procedures were not impermissibly suggestive.[2]

---

[1] The defendant also maintains that discharging a firearm within 500 feet of a building requires proof of knowledge for the element of discharge, a proposition foreclosed by our recent decision in Commonwealth v. Kelly, 484 Mass. 53, 54, 66 (2020).

[2] We acknowledge the amicus brief of the Massachusetts Association of Criminal Defense Lawyers.

Background.  We recite the facts the jury could have found in the light most favorable to the Commonwealth, reserving some details for later discussion.  See Commonwealth v. Palermo, 482 Mass. 620, 621 (2019).

Nathaniel Perez, David Semprit, Vanessa Dubey, and Ricky Alcantara attended a party and left together in Perez's automobile.  They drove to a hotel, where another party was underway.  Outside the hotel, they encountered the defendant, who got into the vehicle.  The group then drove to the home of a friend of Dubey's, and some or all of the vehicle's occupants got out.  The defendant took a firearm that belonged to Perez from the vehicle and discharged it twice into the air.

Police officers responded to a report of shots fired in the area.  They did not recover the weapon or any projectiles, but they did find two shell casings imprinted with the characters "9-M-M."  An officer testified that the casings were "consistent with shell casings that would be left behind after a piece of ammunition had been fired."

Police obtained a surveillance video recording of the intersection where the incident took place.  The recording showed a man getting out of a vehicle, raising an object in the air, and two flashes of light emitting from the object.  Based on the recording, police interviewed Dubey, Perez, Semprit, and Alcantara.  An officer showed Dubey an array of eight

photographs, one of which was the defendant. She identified the defendant as "the guy with the gun." Police later interviewed Semprit and showed him the same photographic array. He identified the defendant as the person who had discharged the weapon.

Semprit and Perez each testified at trial that the defendant had discharged the weapon. Additionally, the surveillance video recording was introduced in evidence. Dubey identified the man who appeared to discharge a firearm as the defendant.[3] A Superior Court jury convicted the defendant of unlawful possession of a firearm, unlawful possession of a loaded firearm, and discharging a firearm within 500 feet of a building. The defendant appealed from his convictions, and we transferred the case from the Appeals Court on our own motion.

Discussion. 1. Unlawful possession of a firearm. General Laws c. 269, § 10 (a), states that "[w]hoever, except as provided or exempted by statute, knowingly has in his possession . . . a firearm, loaded or unloaded, as defined in [G. L. c. 140, § 121,] . . . shall be punished . . . ." A firearm is defined as a "weapon . . . from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than [sixteen] inches." G. L. c. 140, § 121.

---

[3] Ricky Alcantara did not testify.

The defendant argues that his conviction of unlawful possession of a firearm required proof that he knew the facts that caused the weapon to meet the statutory definition of a firearm, and that the evidence of such knowledge in this case was insufficient.

Our objective in interpreting a statute "is to ascertain and effectuate the intent of the Legislature." Commonwealth v. Newberry, 483 Mass. 186, 192 (2019), citing Commonwealth v. Curran, 478 Mass. 630, 633 (2018). To do so, "we look to the words of the statute, 'construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.'" Commonwealth v. J.A., 478 Mass. 385, 387 (2017), quoting Boston Police Patrolmen's Ass'n, Inc. v. Boston, 435 Mass. 718, 720 (2002).

Prior to 1974, the crime of unlawful possession of a firearm did not contain a mandatory minimum punishment for individuals who previously had not been convicted of a felony. See G. L. c. 269, § 10 (a), as amended through St. 1973, c. 588. Nor did it contain a mens rea requirement. See id. In 1974, the Legislature enacted the so-called Bartley-Fox legislation, which amended the statute to mandate a minimum punishment of one year of imprisonment. See Commonwealth v. Lemay, 11 Mass. App. Ct. 992, 992 (1981), citing G. L. c. 269, § 10, as amended by

St. 1974, c. 649, § 2. In response to the change, and "mindful of . . . the need to avoid possible constitutional doubts," (citation omitted), we interpreted the statute to contain an implied requirement that a defendant knew he or she possessed a firearm. See Commonwealth v. Jackson, 369 Mass. 904, 916 (1976). We later clarified the contours of this knowledge requirement, and held that the Commonwealth must prove the defendant knew that the weapon was a firearm "within the generally accepted meaning of that term." See Commonwealth v. Sampson, 383 Mass. 750, 762 (1981), and cases cited. See also Commonwealth v. Bacon, 374 Mass. 358, 361 (1978) ("the characteristics of a gun are obvious. Therefore, in gun cases, all an accused need know is that he [or she] is carrying a gun"); Commonwealth v. Papa, 17 Mass. App. Ct. 987, 987-988 (1984), citing Sampson, supra at 762-763 & n.16 (where "a conventional firearm with its obvious dangers is involved, the Commonwealth need not prove that a defendant knows the exact capabilities or characteristics of the gun which make it subject to regulation").

In 1990, the Legislature added the word "knowingly" to the statute. See St. 1990, c. 511, § 2; Commonwealth v. Cornelius, 78 Mass. App. Ct. 413, 416 & n.3 (2010). The defendant argues that this insertion abrogated our holding in Sampson, 383 Mass. at 762. He bases his argument on Commonwealth v. Cassidy, 479

Mass. 527, 532 (2018), cert. denied, 139 S. Ct. 276 (2018), in which we examined the mens rea requirements for a violation of G. L. c. 269, § 10 (m). That statute provides for punishment of anyone who, without a license, "knowingly has in his [or her] possession . . . a large capacity weapon" (as defined in G. L. c. 140, § 121). See G. L. c. 269, § 10 (m). We stated that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." Cassidy, supra at 534, quoting Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009). We therefore concluded that the Commonwealth must prove that the defendant was aware of the facts that caused the weapon to meet the statutory definition of a large capacity weapon. Cassidy, supra at 536.

The defendant argues that this principle of statutory interpretation also should be applied to G. L. c. 269, § 10 (a), which is worded similarly: "Whoever . . . knowingly has in his possession . . . a firearm, loaded or unloaded, as defined in [G. L. c. 140, § 121,] . . . shall be punished. . . ." But the situation here is distinguishable for several reasons. First, the history of G. L. c. 269, § 10 (a), demonstrates that the Legislature did not intend to require knowledge that the weapon

met the statutory definition.  From 1984 through the present,[4] the Criminal Model Jury Instructions for Use in the District Court have stated that a defendant need know only that the weapon is a firearm within the common meaning of the word.[5] Since 1990, the Legislature repeatedly has amended G. L. c. 269, § 10, and has not demonstrated a clear intent to change the rule articulated in Sampson, 383 Mass. at 762.  See Commonwealth v.

---

[4] Our case law during this period implicitly has endorsed the rule set forth in Commonwealth v. Sampson, 383 Mass. 750, 762 (1981).  See Commonwealth v. Young, 453 Mass. 707, 713 n.9 (2009), citing Commonwealth v. Jackson, 369 Mass. 904, 916 (1976), and Sampson, supra at 753 ("To establish a violation of G. L. c. 269, § 10 [a], the Commonwealth must establish that . . . the defendant knowingly possessed the firearm"); Commonwealth v. Sann Than, 442 Mass. 748, 752-753 nn.4, 5 (2004) (quoting jury instructions regarding mens rea); Commonwealth v. O'Connell, 432 Mass. 657, 663-664 (2000), citing Sampson, supra at 762-763 & n.16, Commonwealth v. Bacon, 374 Mass. 358, 360-361 (1978), and Commonwealth v. Papa, 17 Mass. App. Ct. 987, 987-988 (1984) (in prosecution for violation of G. L. c. 269, § 10 [c], defendant's "ignorance vis-à-vis . . . firearm's dimensions is not a valid defense").

[5] See Instruction 7.600 of the Criminal Model Jury Instructions for Use in the District Court (2013) ("Commonwealth must prove beyond a reasonable doubt that the defendant . . . knew that the item was a 'firearm,' within the common meaning of that term.  If it was a conventional firearm, with its obvious dangers, the Commonwealth is not required to prove that the defendant knew that the item met the legal definition of a firearm"); Instruction 5.601 of the Model Jury Instructions for Use in the District Court (1995) (same); Instruction 5.60 of the Model Jury Instructions for Criminal Offenses Tried in the District Court (1984) ("If the defendant knew that he [she] was carrying a conventional weapon, the Commonwealth is not required to prove that the defendant knew that it met the legal definition of a firearm" [citing Papa, 17 Mass. App. Ct. at 987-988]).

Callahan, 440 Mass. 436, 441-442 (2003) (we presume that Legislature is aware of decisions of this court and previous legislation and would enact changes if it disagreed with our interpretation of its intent); St. 1996, c. 20; St. 1996, c. 151, §§ 487, 488; St. 1998, c. 180, §§ 68-70; St. 2006, c. 48, §§ 5-7; St. 2014, c. 284, §§ 89, 90, 92.

Moreover, the rule suggested by the defendant would be unworkable and counterproductive. See Ciani v. MacGrath, 481 Mass. 174, 178 (2019) ("we will not adopt a literal construction of a statute if the consequences of doing so are absurd or unreasonable" [quotation and citation omitted]). General Laws c. 269, § 10 (a), was intended to criminalize unlicensed possession of a firearm, even absent discharge. Compare id. (no element of discharge) with G. L. c. 269, § 12E (prohibiting discharge within 500 feet of building). But proving knowledge that a firearm met the statutory definition would entail proving knowledge of the weapon's operability. See G. L. c. 140, § 121. This, in turn, often would require proof that the weapon had been discharged previously, thereby running counter to the statute's goal of criminalizing mere possession. Cf. Cassidy, 479 Mass. at 537, quoting Staples v. United States, 511 U.S. 600, 615 n.11 (1994) ("firing a fully automatic weapon would

make the regulated characteristics of the weapon immediately apparent to its owner").[6]

Lastly, the large capacity of a weapon often is not readily apparent.  See Commonwealth v. Resende, 94 Mass. App. Ct. 194, 202 (2018) (insufficient evidence to infer knowledge of large capacity).  Cf. Cassidy, 479 Mass. at 533, quoting Staples, 511 U.S. at 615 ("type of weapon owned by that defendant might 'give no externally visible indication that it is fully automatic'").  Therefore, in Cassidy, supra at 536, it was logical to require knowledge of the large capacity of the weapon prior to imposing criminal responsibility.  See Staples, supra at 621-622 ("mere unregistered possession of certain types of regulated weapons -- often difficult to distinguish from other, nonregulated types, has been held inadequate to establish the requisite knowledge" [quotation, citation, and alterations omitted]).  Here, conversely, the "characteristics of a gun are obvious."  See Sampson, 383 Mass. at 763, quoting Bacon, 374 Mass. at 361.  See

---

[6] Courts in some other jurisdictions have come to the same conclusion that requiring knowledge of the physical characteristics that subject a weapon to regulation would undermine the goals of the statutory scheme.  See State v. Winders, 366 N.W.2d 193, 196 (Iowa Ct. App. 1985) ("To hold otherwise would only serve to undermine the very purpose of the provision in regulating possession of weapons in the interest of public safety.  Furthermore, it would place an almost impossible burden of proof on the State . . ."); State v. Hill, 970 S.W.2d 868, 873 (Mo. Ct. App. 1998), citing Winders, supra (same); State v. Watterson, 198 N.C. App. 500, 512 (2009) (noting difficulty of proving knowledge of barrel length).

also United States v. Jones, 222 F.3d 349, 353 (7th Cir. 2000) ("Based on the rifle's obvious characteristics[,] . . . the jury could infer that [the defendant] knew that the instrument he possessed was a firearm, not a BB gun"); Papa, 17 Mass. App. Ct. at 987 ("conventional firearm with its obvious dangers"). Therefore, under G. L. c. 269, § 10 (a), it is sensible to require knowledge only that the "instrument is a firearm within the generally accepted meaning of that term."  See Sampson, supra at 762.

In light of the above, we conclude that G. L. c. 269, § 10 (a), does not require knowledge of the facts that make the weapon a firearm according to the statutory definition.

The defendant raises three other arguments that are dependent on his mens rea argument.  First, he asserts that the evidence before the grand jury was insufficient to establish probable cause that he knew the firearm was capable of discharging a shot or a bullet.  Second, he argues that there was a substantial risk of a miscarriage of justice created by the trial judge's failure to instruct the jury that the defendant must have known of the physical characteristics that made the weapon a firearm according to the statute.  Third, he contends that if this type of knowledge is required for a conviction under G. L. c. 269, § 10 (a) (unlawful possession of a firearm), it necessarily must be required for a conviction

under G. L. c. 269, § 10 (n) (unlawful possession of a loaded firearm). See Commonwealth v. Brown, 479 Mass. 600, 604 (2018) ("in order to be convicted under G. L. c. 269, § 10 [n], an individual must first have been convicted under G. L. c. 269, § 10 [a] or [c]"). Because we conclude that a defendant need not be aware of the physical characteristics that brought a weapon within the statutory definition of a firearm, these three claims are unavailing.

2. Sufficiency. The defendant argues further that the evidence was insufficient to establish that the weapon was capable of discharging a shot or bullet, as required by G. L. c. 140, § 121. We do not agree.

In Commonwealth v. Housewright, 470 Mass. 665, 680 (2015), a witness testified that the defendant loaded a weapon and fired it at someone, creating a flash and a loud sound. We held that the evidence was sufficient for the jury to find that the weapon met the statutory definition of a firearm, despite the fact that neither the weapon nor any projectiles were recovered. See id. See also Commonwealth v. Williams, 422 Mass. 111, 120-121 (1996) ("jury could properly have considered eyewitness testimony that the defendant had a firearm in his possession, even in the absence of the recovery of such a firearm" [citation omitted]); Commonwealth v. Tuitt, 393 Mass. 801, 810 (1985), citing Commonwealth v. Fancy, 349 Mass. 196, 204 (1965) (expert

testimony was not necessary to establish that weapon met statutory definition of firearm).

Here, Perez testified that the defendant "had my gun, and he shot it." Semprit testified that the defendant "set off a shot." Surveillance video footage showed the defendant holding an object resembling a firearm in the air, and two flashes of light emitting from it. Two shell casings labelled "9-M-M" were found at the scene, and an officer answered affirmatively when asked whether the casings were "consistent with actual working ammunition." This evidence is substantially similar to that in Housewright, 470 Mass. at 680.

The defendant argues that the discharges could have been blanks, and the weapon might have been incapable of firing an actual shot or bullet. This farfetched explanation does not negate the strong evidence that the weapon was operable. See Commonwealth v. Santana, 420 Mass. 205, 214 (1995), quoting Commonwealth v. Merola, 405 Mass. 529, 533 (1989) (evidence "need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt"). See also Commonwealth v. Combs, 480 Mass. 55, 61-62 (2018), citing Commonwealth v. Gonzalez, 475 Mass. 396, 407 (2016) ("Proof of an essential element of a crime may be based on reasonable inferences drawn from the evidence, but it may not be based on conjecture"). Here, there was

sufficient evidence that the weapon met the statutory definition of a firearm.

3. _Discharge of firearm within 500 feet of building_. The defendant contends that we should interpret G. L. c. 276, § 12E, to contain an implied requirement that the discharge be done knowingly. He further argues that, after we infer that the word "knowingly" modifies the element of discharge, we should apply the analysis from _Cassidy_, 479 Mass. at 534, to require knowledge of all elements of the statute. The first part of the defendant's argument is foreclosed by our recent decision in _Commonwealth_ v. _Kelly_, 484 Mass. 53, 54, 66 (2020), in which we held that the statute did not contain a mens rea requirement for the element of discharge. The second part of the defendant's argument relies on the first, and therefore falls with it.

4. _Photographic array_. The defendant argues that the Superior Court judge who heard his pretrial motion to suppress the out-of-court identifications made by Dubey and Semprit (motion judge) erred in denying the motion. "[T]he defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." _Commonwealth_ v. _Arzola_, 470 Mass. 809, 813 (2015), cert. denied, 136 S. Ct. 792 (2016), quoting _Commonwealth_ v. _Cavitt_, 460 Mass.

617, 632 (2011). "'[W]e accept the [motion] judge's findings of fact . . . absent clear error,' but we independently determine 'the correctness of the judge's application of constitutional principles to the facts as found.'" Commonwealth v. Amaral, 482 Mass. 496, 499 (2019), quoting Commonwealth v. Molina, 467 Mass. 65, 72 (2014).

The motion judge found that the eight photographs showed men of the same eye color, race, and hair color, with similar facial hair and similar facial features; two of the men had slightly higher hairlines. In the photographs, four men wore white shirts, one had a black shirt, and two were shirtless. The defendant was the only individual wearing a red shirt. The officers who administered the photographic arrays knew that the defendant was a suspect. The judge concluded that the photographic arrays were not impermissibly suggestive.

The defendant argues that because he was the only person wearing a red shirt, the identification procedures were inherently suggestive. See Commonwealth v. Thornley, 406 Mass. 96, 100 (1989) ("we disapprove of an array of photographs which distinguishes one suspect from all the others on the basis of some physical characteristic" [citation omitted]). The man who discharged the firearm, however, was not described as wearing a red shirt. Indeed, a witness testified that he might have been shirtless. Therefore, any suggestibility created by the red

shirt was minimal.  See Arzola, 470 Mass. at 813 (array was not impermissibly suggestive despite fact that perpetrator wore gray shirt and defendant's photograph was only one shown wearing gray shirt).  Contrast Thornley, supra at 100-101 (fact that only photograph in array with individual wearing glasses was defendant's photograph was impermissibly suggestive because eyewitnesses relied on glasses in making identification).

The defendant also argues that the identification was tainted because the administering officers knew his identity and that he was a suspect.  "[I]t is the better practice to have an identification procedure administered by a law enforcement officer who does not know the identity of a suspect . . . ."  Commonwealth v. Watson, 455 Mass. 246, 253 (2009).  The absence of such a procedure, however, does not mean that the identification was inevitably impermissible.  See id., citing Commonwealth v. Silva-Santiago, 453 Mass. 782, 797 (2009).  Importantly, the motion judge found that the witnesses knew the defendant prior to the incident.  This familiarity outweighed any suggestiveness created by the officers' knowledge of the defendant's identity.  See Commonwealth v. Thomas, 476 Mass. 451, 461 (2017).  The judge's finding was not clearly erroneous.

Judgments affirmed.