COMMONWEALTH *vs.* MICHAEL PAYNE
(and seven companion cases[1]).

Suffolk. January 6, 1998. - February 17, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Evidence,* Photograph, Identification, Presumptions and burden of proof, Joint
enterprise. *Constitutional Law,* Identification, Burden of proof. *Identifica-
tion. Practice, Criminal,* Argument by prosecutor, Instructions to jury,
Presumptions and burden of proof, Reasonable doubt, Lesser included of-
fense, Duplicative convictions, Capital case. *Joint Enterprise. Robbery.
Homicide. Felony-Murder Rule.*

At a murder trial, the judge correctly denied the defendant's motion to sup-
press evidence of a pretrial photographic identification, where the defendant
did not demonstrate that the identification procedures were impermissibly
suggestive. [694-695]

At the trial of indictments, the prosecutor's comment in closing argument,
drawing the jury's attention to the demeanor on the stand of certain wit-
nesses as a consideration in the jury's determination of their credibility,
was not improper [695-696]; the prosecutor's remarks impressing upon the
jury their duty to act with impartiality were appropriate [696]; and nothing
in the prosecutor's closing argument shifted the burden of proof to the
defendant [696-697].

At a murder trial, no substantial likelihood of a miscarriage of justice was cre-
ated by a prosecutor's misstatement, which was an isolated remark in an
otherwise appropriate closing argument, in light of the judge's instructions.
[697]

At a criminal trial, the judge's instructions to the jury on eyewitness identifica-
tion were not erroneous [698], and his instruction regarding the Com-
monwealth's burden of proof was adequate [698-699]; further, his instruc-
tions on joint venture [699-700] and extreme atrocity or cruelty [700]
created no substantial risk of a miscarriage of justice.

At the trial of two indictments for armed robbery, the defendant demonstrated
no harm from the judge's error in failing to instruct the jury, with respect
to one indictment, on the lesser included offenses of unarmed robbery and
larceny, inasmuch as the defendant was acquitted of that charge; as to the
other indictment, the evidence did not warrant any instruction on lesser
included offenses. [700-701]

There was no merit to criminal defendants' claims that the judge made inap-
propriate remarks in his jury instructions. [701-702]

Where the jury in a first degree murder case based their convictions of the

[1]Four against Marcus Edwards and three against Michael Payne.

two defendants on both felony-murder, with armed robbery as the underlying felony, and extreme atrocity or cruelty, the defendants' convictions of armed robbery were not duplicative. [702]

INDICTMENTS found and returned in the Superior Court Department on April 9, 1993.

A pretrial motion to suppress evidence was heard by *Stephen E. Neel*, J., and the cases were tried before *John F. Moriarty*, J.

*M. Page Kelley* for Marcus Edwards.

*David P. Hoose* for Michael Payne.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted each of the defendants, Michael Payne and Marcus Edwards, on two indictments charging murder in the first degree,[2] one indictment charging armed robbery, and one indictment charging possession of a handgun without a license. On appeal, both defendants contend that (1) the prosecutor's closing argument was improper; (2) the judge's instructions to the jury were erroneous in several respects; and (3) their armed robbery convictions should have been set aside as duplicative of their felony-murder convictions. Payne also claims that the judge erred in denying his motion to suppress two witnesses' pretrial identifications of him. Finally, the defendants request that we exercise our plenary power under G. L. c. 278, § 33E, to order a new trial or to reduce the murder convictions to a lesser degree of guilt. For the reasons set forth below, we affirm the convictions and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with certain issues raised. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994); *Commonwealth* v. *Burnett*, 417 Mass. 740, 741 (1994). On March 28, 1993, at approximately 4 A.M., the defendants and the two victims, Kevin Christopher and Lloyd Industrious, were among a group of people gathered on Lindsey Street in the Dorchester section of Boston. A party at a Lindsey Street residence had just broken up, and the victims were sitting in a motor vehicle. According

---

[2]The jury convicted the defendants of murder in the first degree by reason of extreme atrocity or cruelty and felony-murder.

to several eyewitnesses, the defendants suddenly fired several shots at the victims, killing them. At least one of the defendants then approached, grabbed jewelry from one or both of the victims, and fled on foot. Christopher suffered eleven gunshot wounds and Industrious seven.

1. *Photographic identification of Payne.* On April 7, 1993, two individuals who had witnessed the incident from an automobile parked nearby identified Payne as one of the shooters from an array of fourteen photographs shown to them by police. On appeal, Payne contends that the judge erred in refusing to suppress evidence of this pretrial identification. "In order to suppress a photographic identification, the defendant must [initially] show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." *Commonwealth* v. *Miles*, 420 Mass. 67, 77 (1995).

In the present case, Payne failed to show by a preponderance of the evidence that the circumstances surrounding the photographic array were unnecessarily suggestive.[3] There was no evidence that the police engaged in any misconduct during the identification procedure, and the judge found that the techniques of the officers were not impermissibly suggestive. The witnesses identified Payne from a collection of fourteen photographs, a number well above some of the arrays approved by this court. See *Commonwealth* v. *Miles, supra* (nine photographs); *Commonwealth* v. *Jackson*, 419 Mass. 716, 727 (1995) (eight photographs). All photographs, moreover, depicted black males sharing Payne's age and complexion. Compare *Commonwealth* v. *Miles, supra* (identification not impermissibly suggestive where "the array did not distinguish the defendant on the basis of his age") with *Commonwealth* v. *Thornley*, 406 Mass. 96, 99-100 (1989) (where assailant's eyeglasses were determinative identifying characteristic and only defendant's

---

[3]Payne also argues that the judge should have suppressed the witnesses' pretrial identifications on the ground that they were unreliable. However, "[t]he question raised by a motion to suppppress identification testimony is not whether the witness was or might be mistaken but whether any possible mistake was or would be the product of improper suggestions made by the police." *Commonwealth* v. *Paszko*, 391 Mass. 164, 172 (1984). "When the procedures are not suggestive, the pretrial identifications are admissible without a further showing." *Commonwealth* v. *Warren*, 403 Mass. 137, 139 (1988). Accordingly, we reject Payne's claim.

photograph featured eyeglasses, array was unnecessarily suggestive).

The fact that the witnesses had previously seen his picture in newspapers and on television did not invalidate the identification. "In the absence of police manipulation of the press, 'simple exposure to the media is not sufficient ground to suppress an identification.' " *Commonwealth* v. *Otsuki*, 411 Mass. 218, 234-235 (1991), quoting *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 542 (1990). Payne presented no evidence of such manipulation. Furthermore, the witnesses testified at the suppression hearing, and the judge found that they recognized him from the shooting incident, not the media photographs. Taken together, these facts justify the judge's conclusion that the pretrial identification procedure was not impermissibly suggestive. The judge's denial of Payne's suppression motion was proper.

2. *The prosecutor's closing argument.* Both defendants contend that the prosecutor's closing at various points exceeded the bounds of proper argument. We disagree, but will address each claim individually.

First, the defendants claim that the prosecutor impermissibly referred to the witnesses' fear of testifying at trial.[4] In response to a defense motion, the judge ruled prior to trial that the Commonwealth was prohibited from referring to the witnesses' fear of testifying at trial. "It is not improper to make a factually based argument that, due to the demeanor . . . and appearance of a witness, a particular witness should be believed or disbelieved." *Commonwealth* v. *Kozec*, 399 Mass. 514, 521 (1987). Taken in context, the prosecutor in the present case was merely asking the jury to consider the witnesses' fearful demeanor in making their credibility determination. See *Commonwealth* v. *Lapointe*, 402 Mass. 321, 331 (1988). The fact that the judge refused to give the jury a special instruction to disregard the prosecutor's comments likewise suggests that, taken in context, the comments were directed to the witnesses'

---

[4]Referring to these witnesses, the prosecutor initially stated: "They watched. They saw. And I suggest to you that what they get out of testifying here is more fear. They get to come in here and be scared again. That's what they get out of their testimony." Later, the prosecutor remarked: "They really would be best off if they never had to come here at all. You got to see their demeanor on the stand. You got to see what it was for them to come and face these young men, and while facing these young men, tell you what happened."

"demeanor on the stand." Consequently, the argument was not improper in this regard.

Second, the defendants claim that the prosecutor, in saying that it was "much easier to simply acquit" the defendants, implied that the jury had a duty to convict.[5] While we disfavor closing arguments referring to the jury's duty to convict, *Commonwealth v. Smith*, 413 Mass. 275, 282-283 n.6 (1992), we fail to see any such reference in the present case. Rather, as the judge noted, the remarks were "quite [to] the contrary." In making the remarks the prosecutor sought to prevent the jury from being swayed into acquitting the defendants by emotion or laziness. Indeed, he repeatedly stated that the jury's duty was not to the defendants or to the Commonwealth, but to "the truth." *Commonwealth v. LaCorte*, 373 Mass. 700, 707 (1977) ("Both judge and counsel may properly impress upon the jury their duty to act with . . . impartiality"). Accordingly, the prosecutor's remarks were appropriate.

Third, the defendants contend that the closing impermissibly suggested that the burden of proof was on the defendants. Specifically, the defendants point to the prosecutor's remark that the jury can "believe the [eyewitness] identifications" or "believe the defendants' denial." This was not an invitation to shift the burden from the Commonwealth. The prosecutor did not suggest that believing the defendants' testimony was a prerequisite to acquittal. See *Commonwealth v. Yesilciman*, 406 Mass. 736, 746 (1990) (prosecutor "may argue that defense witnesses, including the defendant, are not credible"); *Commonwealth v. Shea*, 401 Mass. 731, 739 (1988) (not improper for prosecutor to remark that defendant was trying to "fool"

---

[5]The prosecutor stated, in relevant part: "Why would you choose to believe the defendants? Well first of all, because it's the easier thing to do frankly. It is easier to discharge your duty by acquittal. Then you don't have to deal with all the other tough issues. And you don't have to deal with the difficulties of the evidence and putting everything together. . . . And so, it would be much more pleasant, it would be much nicer and much easier to simply acquit them. I mean they have mothers who are nice. One has a girlfriend and children. Wouldn't that be much easier? . . . And as attractive as it may be to not hold anyone accountable, your duty is to the truth, not to the defendants, not to the Commonwealth, not to any side, but to the truth. . . . And so, I suggest to you that, yes, there are reasons to believe these defendants and they are the easy reasons and the easy way to discharge your duty, but I suggest to you, that's not what you're going to do. Rather, you will weigh what every witness has said to you. Treat them all equally and look and see who has reason to tell the truth and who has reason to not."

jury). Moreover, the judge gave forceful instructions on the Commonwealth's burden of proof, stating that it was the defendants' "absolute right . . . to simply come to court, plead not guilty, and then say to the Commonwealth, now you prove it. And say absolutely nothing else if [they] wish." See *Commonwealth* v. *Smith*, 404 Mass. 1, 8 (1989). For these reasons, we reject the defendants' claim.

Finally, the defendants argue that the prosecutor committed reversible error when he incorrectly stated that all the eyewitnesses and the ballistic evidence demonstrated that there were four shooters on the scene.[6] The defendants, however, failed to object to the prosecutor's misstatement. Because the defendants failed to object to the closing argument, we need only consider "whether there is a substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Barros*, 425 Mass. 572, 582 (1997), quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992). Under that standard, we assess the misstatement at issue "in light of the entire argument, the judge's instructions, and the evidence at trial." *Commonwealth* v. *Fryar*, 425 Mass. 237, 250, cert. denied, 118 S. Ct. 636 (1997), and cases cited. Here, the prosecutor's misstatement appears to have been an isolated remark in an otherwise appropriate closing argument. The judge, furthermore, charged the jury: "If at any time during the course of trial, most particularly perhaps in closing arguments, but at anytime any of the counsel may have said anything with regard to what a witness said or did not say, if it differs from what you remember, then you disregard any such conflicting statement by counsel. You be guided by your memory of that testimony and that memory alone." See *Commonwealth* v. *Dixon*, 425 Mass. 223, 235 (1997) (errors nonprejudicial where "the judge instructed the jury that closing arguments were not evidence and that the jurors' own memories and perceptions were controlling"). Finally, the defendants' failure to object to the misstatement at the time suggests to us that no substantial likelihood of a miscarriage of justice was created. *Commonwealth* v. *Barros, supra* at 582.

---

[6]Referring to the number of shooters at the scene, the prosecutor first stated: "Everybody says to you four shooters." The prosecutor, seemingly attempting to corroborate this testimony, later told the jury: "The scientific evidence fits into exactly what these young women said, and they said it with no way to know that." The record indicates, however, that some witnesses testified that there were only two shooters, while others testified that as many as seven individuals fired shots.

3. *Jury instructions.* The defendants jointly claim that the judge's instructions to the jury were erroneous regarding (1) eyewitness identifications; (2) reasonable doubt; (3) joint venture; and (4) extreme atrocity or cruelty. Edwards also maintains that the judge erred in failing to instruct the jury on larceny as a lesser included offense of armed robbery.

The defendants also contend that the judge erred in (1) authorizing the jury to consider the strength of the witnesses' in-court identifications; and (2) failing to inform the jury of the possibility of a witness's honest but mistaken identification. Contrary to the defendants' assertions, the judge's instructions regarding eyewitness identifications were proper. With respect to the former, the judge stated in his main charge: "You may take into account both the strength of the identification and the circumstances under which the identification was made." Although we recently held in *Commonwealth* v. *Santoli*, 424 Mass. 837, 845 (1997), that language telling the jury to take into account the strength of the identification "should be omitted from the standard instruction concerning eyewitness testimony," we expressly declined to apply the rule retroactively. The judge's charge in the present case preceded our decision in *Commonwealth* v. *Santoli, supra,* and we continue to adhere to our decision against retroactive application. With respect to the latter claim, the judge adequately informed the jury of the possibility of honest but mistaken identification. In his main charge, he stated: "[I]t is possible for a witness on the stand making an identification to be mistaken. That is a possibility and it is something that must be guarded against." Later, he added, "I want to make it very clear that, of course, our law does recognize that identifications can be the result of an honest mistake as well as a complete falsehood." Although the judge's instructions did not use the exact words of the model charge set forth in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), they sufficiently conveyed the legal concept of a good faith, mistaken identification. *Commonwealth* v. *Trapp*, 423 Mass. 356, 359, cert. denied, 117 S. Ct. 618 (1996). Consequently, the witness identification instructions were not erroneous.

Similarly, the judge's instruction regarding the Commonwealth's burden of proof was adequate. In the instruction, the judge defined "reasonable doubt," in part, by (1) mentioning the phrase "moral certainty"; and (2) comparing it to the civil preponderance standard. In *Commonwealth* v. *Watkins*, 425

Mass. 830, 837-839 (1997), we held that an instruction virtually identical to the one at issue, given by the same judge, in a previous trial involving the same shooting, was appropriate despite the presence of "moral certainty" language and a comparison to the civil standard. We see no reason to abandon that decision or its reasoning.[7]

The defendants' next claim, raised for the first time on appeal, that the judge wrongly omitted the "shared mental state" requirement from his joint venture instructions is likewise unavailing. The judge expressly noted in his general discussion of joint venture that "[t]he defendant's guilt as a joint venturer is established if it is shown beyond a reasonable doubt that he intentionally assisted the actual perpetrator in the commission of the crime and that he did this while sharing the same mental state required for that crime." Immediately thereafter, he correctly explained the elements of armed robbery, and then "caution[ed]" the jury, "[b]efore you may find . . . a defendant guilty as a joint venturer with another person of armed robbery, you must be satisfied beyond a reasonable doubt that the defendant . . . knew, that he had actual knowledge that his co-venturers were armed with a dangerous weapon." In our view, the judge here was not attempting to lay out every element of joint venture (for he had just done that), but rather to highlight the additional requirement where armed robbery is involved that a joint venturer know that the principal is armed. *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995). The judge, moreover, added shortly thereafter that an individual "must share the same mental attitude as the actual perpetrator" to be convicted of armed robbery as a joint venturer. Thus, when considered in its entirety, *Commonwealth* v. *Cataldo*, 423 Mass.

---

[7]We note that, in *Commonwealth* v. *Watkins*, 425 Mass. 830, 837-839 (1997), the defendant did not claim that the instruction's reference to the civil preponderance standard rendered it defective. Although references to the civil standard are not preferred, they are tolerable when "placed with instructions that fully conveyed the principles of the *Webster* charge." *Commonwealth* v. *Crawford*, 417 Mass. 358, 367 (1994), citing *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). In the present case, the judge stated that proof beyond a reasonable doubt means "such proof as fully convinces you as reasonable persons . . . that the defendant is guilty." As we concluded in *Watkins, supra* at 838, quoting *Commonwealth* v. *Pinckney*, 419 Mass. 341, 344 (1995), "[t]his instruction is akin to the 'abiding conviction' phrase used in *Webster* and 'impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused.' "

318, 321 (1996), the joint venture instructions presented no substantial likelihood of a miscarriage of justice.[8]

Also raised for the first time on appeal are the defendants' complaints regarding the judge's instructions on extreme atrocity or cruelty. The defendants claim that the instructions were unconstitutionally vague and failed to convey the Commonwealth's burden of proving extreme atrocity or cruelty beyond a reasonable doubt. The judge, however, diligently followed this court's directive in *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994), in telling the jury that they "should not find extreme atrocity or cruelty unless at least one of those six factors [stated in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983)] which I mentioned existed." Moreover, the judge adequately conveyed the Commonwealth's burden of proof to the jury when he instructed: "Now the Commonwealth has the burden of proving beyond any reasonable doubt . . . that [the murders committed were] either, one, deliberately premeditated or, two, extremely atrocious or cruel or, three, committed in the commission or attempted commission of an armed robbery." In short, there was no error.

Finally, we reject Edwards's claim that the judge committed reversible error when he declined to instruct the jury on larceny from the person as a lesser included offense of armed robbery. Specifically, Edwards contends that there was sufficient evidence to warrant such an instruction and thus his armed robbery conviction is invalid. "A judge is required to charge the jury concerning lesser included offenses if the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978). In the present case, Edwards was tried on two indictments charging armed robbery for allegedly taking jewelry from Industrious and Christopher. There was some evidence that Edwards was unarmed when he snatched the chain from Industrious. No such evidence was presented as to Christopher. Therefore, with respect to Industrious alone, an instruction, not only on armed

---

[8]We also reject Payne's claim that joint venture instructions were unwarranted because the Commonwealth had abandoned that theory of guilt. The prosecutor mentioned the joint venture theory in both his opening statement and closing argument. In addition, there was more than ample evidence presented to convict under a joint venture theory. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Consequently, the instruction was appropriate.

robbery, but also on unarmed robbery and larceny, was appropriate. In our view, however, Edwards suffered no harm from the lack of additional instruction because the jury acquitted him entirely of the armed robbery indictment relating to Industrious. For these reasons, reversal is not required.

4. *The judge's other statements.* The defendants also maintain that the judge made other inappropriate remarks during his jury instructions. Specifically, they claim the judge erred in telling the jury that (1) they were the "very first tribunal" to determine the defendants' guilt; and (2) the defendants were "charged with murder in the first degree."

"In analyzing challenged jury instructions, we examine the charge in its entirety to determine its impact on the jury's perception of their fact-finding function." *Commonwealth* v. *Cataldo, supra* at 320-321. Here, the judge's remark that the jury were "the very first tribunal" to determine the defendants' guilt, taken in context, sought to bolster the notion that the defendants, despite having been arrested and indicted, were still presumed innocent.[9] In our view, the remark did not "reduc[e] the jurors' appreciation of the significance of their deliberations and verdict," *Commonwealth* v. *Walker,* 370 Mass. 548, 574, cert. denied, 429 U.S. 943 (1976), but rather "focus[ed] on the prosecutor's burden of producing evidence of guilt and persuading the jury of the guilt beyond a reasonable doubt." *Commonwealth* v. *Boyd,* 367 Mass. 169, 188 (1975). Similarly, the judge's isolated remark that the defendants had been "charged with murder in the first degree" was innocuous. As we just noted, the judge made abundantly clear that merely being charged with a particular crime, whether it is murder in the first

---

[9]The judge stated, in relevant part: "Under our law, every man and every woman who comes before the Bar of justice charged with having committed a crime comes clothed in what we call a presumption of innocence. Now that is an extremely important concept. . . . What precisely does it mean? Well it means a number of things really. First, it means the fact that a man has been arrested, charged with having committed a crime, is no evidence whatsoever that he did commit that crime. The fact that a man has been indicted by a Grand Jury is no evidence whatsoever of guilt. . . . The fact that there may have been preliminary hearings leading up to the trial is no evidence whatsoever of guilt. And the fact that defendants are required to come here to court, sit in the center of the courtroom and stand trial, that, too, is no evidence whatsoever of guilt. Please remember, the twelve of you, and it will be twelve of you incidentally rendering the verdicts in this case, you are going to be the first, the very first tribunal to determine whether these two defendants are guilty or not guilty of these charges which have been placed against them."

or second degree, was irrelevant for purposes of determining guilt or innocence.[10] The judge also made clear in his instructions that the jury were to consider both murder in the first and second degree, as well as the Commonwealth's burdens associated with each. We must accept that the jury followed these instructions. *Commonwealth* v. *Cameron,* 385 Mass. 660, 668 (1982). Consequently, we reject the defendants' claim.

5. *Duplicative convictions.* The defendants were both convicted of armed robbery for taking jewelry from one of the victims. On appeal they maintain that their convictions should be vacated because they are duplicative of their felony-murder convictions. Where the possibility exists that the jury rested a conviction of murder in the first degree solely on a felony-murder theory, a separate conviction and sentence for the underlying felony cannot stand. See *Commonwealth* v. *Anderson,* 425 Mass. 685, 692 (1997); *Commonwealth* v. *Raymond,* 424 Mass. 382, 396 (1997). In contrast, where the jury specify an additional, independent basis (i.e., deliberate premeditation, extreme atrocity or cruelty) for the conviction of murder in the first degree, a separate sentence for the underlying felony is appropriate. See *Commonwealth* v. *Raymond, supra* at 396-397; *Commonwealth* v. *Buckley,* 410 Mass. 209, 222 (1991) (affirming consecutive sentences for armed robbery and murder in the first degree by reason of extreme atrocity or cruelty and felony-murder). In the present case, armed robbery served as the underlying felony for the defendants' convictions of felony-murder. In rendering their verdict, however, the jury expressly based the convictions of murder in the first degree on both felony-murder and extreme atrocity or cruelty. Because an additional, independent basis for the murder convictions exists, the armed robbery convictions need not be vacated, and the imposition of concurrent sentences was not erroneous.

6. *General Laws c. 278, § 33E.* We decline to exercise our plenary power under G. L. c. 278, § 33E, to order a new trial or to reduce the murder convictions to a lesser degree of guilt.

*Judgments affirmed.*

---

[10]We also note that, at the outset of his instructions on murder, the judge correctly stated: "I now come to the four indictments which charge each of the defendants with the crime of murder."