COMMONWEALTH *vs.* BRANDON WATSON.

Hampden. September 9, 2009. - October 29, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Constitutional Law,* Identification, Assistance of counsel. *Identification. Evidence,* Identification, Expert opinion. *Witness,* Expert. *Practice, Criminal,* Assistance of counsel, Request for jury instructions.

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress out-of-court photographic identifications, where, with regard to the first identification, although it would have been better if the police detective showing the witness a photographic array had not told the witness that the array included the photograph of a suspect, the detective's statement did not render the identification process impermissibly suggestive [250-253]; further, while the better practice would have been to have a law enforcement officer who did not know the identity of the suspect (here, the defendant) administer the identification procedure, in order to obviate the risk of suggestion, there was no evidence that the detective consciously or unconsciously conveyed to the witness his knowledge of the defendant's identity [253]; moreover, in the circumstances of the case, the detective's decision to continue with the identification despite the fact that the witness was under the influence of pain medication at the time did not render the procedure impermissibly suggestive [253-254]; in addition, the judge's consideration of the witness's expression of a degree of certainty in his identification was proper [254]; finally, given that the initial identification procedure was not unnecessarily suggestive, the Commonwealth was not required to show that the second identification had an independent source, and there was no evidence to compel a conclusion that the second identification was unnecessarily suggestive [254-255].

Discussion of the standard of review applicable to a decision on a motion for a new trial that is based on a claim of ineffective assistance of counsel. [256]

A Superior Court judge did not abuse his discretion in denying the criminal defendant's motion for a new trial, where the defendant did not satisfy his burden of establishing that his counsel was ineffective for failing to secure funds for an expert witness to challenge the reliability of a witness's identification of the defendant [257-259]; further, the judge did not abuse his discretion in denying the defendant's motion for a new trial on the ground that his attorney had failed to request "cautionary" instructions on misidentification [259-260].

INDICTMENTS found and returned in the Superior Court Department, four on June 7, 2006, and one on June 30, 2006.

A pretrial motion to suppress evidence was heard by *C. Jeffrey Kinder*, J.; the cases were tried before him, and a motion for a new trial, filed on September 8, 2008, was heard by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Richard L. Goldman* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

*David M. Siegel & Ambica Mohabir*, for New England Innocence Project, amicus curiae, submitted a brief.

SPINA, J. On September 21, 2007, a Superior Court jury convicted the defendant, Brandon Watson, of armed kidnapping, assault and battery by means of a dangerous weapon, unlawful possession of a firearm, unlawful possession of ammunition without a firearm identification card, and armed robbery. The defendant filed a motion for a new trial, claiming that trial counsel provided ineffective assistance in violation of his rights under art. 12 of the Massachusetts Declaration of Rights and the Sixth and Fourteenth Amendments to the United States Constitution. He alleged that trial counsel should have retained an expert witness to challenge an eyewitness's identification of the defendant as one of the perpetrators of the crimes, and should have requested jury instructions specifically tailored to assist the jury in assessing the reliability of eyewitness identifications.[1] The same judge who presided over the trial denied the defendant's motion for a new trial. The defendant appealed from his convictions and from the denial of his motion for a new trial, and we granted his application for direct appellate review. He now contends that (1) the judge erred in denying his motion to suppress an identification that resulted from the administration of a photographic array that, in the defendant's view, was unnecessarily suggestive; (2) he was denied the effective assistance of trial counsel; and (3) expert testimony should be admissible at a defendant's request, and "cautionary" jury instructions should be required, where the reliability of eyewitness identifications is at issue. For the reasons

---

[1] In connection with his motion for a new trial, the defendant filed a motion for funds, pursuant to Mass. R. Crim. P. 30 (c) (5), as appearing in 435 Mass. 1501 (2001), to hire an expert witness to testify about the unreliability of eyewitness identifications. The defendant claimed to be indigent and without sufficient funds to retain the services of such an expert.

that follow, we affirm the defendant's convictions and the denial of his motion for a new trial.[2]

1. *Background.* We summarize the facts found by the judge following the hearing on the motion to suppress, which we have supplemented with other uncontested testimony from that hearing. See *Commonwealth* v. *Gomes*, 453 Mass. 506, 507 (2009).

Sometime after midnight on May 12, 2006, Detective Misael Rodriguez of the Springfield police department responded to Baystate Medical Center (hospital) to interview a gunshot victim, Donald Smith. Smith told Rodriguez that he had been assaulted, bound with duct tape, and shot. He further stated that there had been two assailants, one of whom he knew by the name "Troy." Rodriguez observed that Smith had bullet wounds in his forearm and buttocks, and he appeared to be in pain. Investigation of the incident led to Troy Clemmons as a suspect. At approximately 8:50 A.M. on the morning of May 12, Rodriguez returned to the hospital, where he explained to Smith that the ongoing investigation had resulted in the recovery of vehicles and property, and that one person had been arrested. Rodriguez had with him a series of eight photographs, including one of Clemmons, which he then showed to Smith. Smith, who was alert and coherent at the time, identified the photograph of Clemmons as one of his assailants.

The investigation of the incident continued. Rodriguez learned that one of the vehicles used by the assailants during the course of the assault had been stopped for a traffic violation by Springfield police on the evening of May 11, shortly before the assault occurred. The vehicle, a sport utility vehicle (SUV), was distinctive because it had a North Carolina vanity registration plate. At the time of the traffic stop, the defendant was driving the SUV. Using this information, Rodriguez obtained a photograph of the defendant and included it among an array of eight color photographs of African-American males of similar age with facial hair. Rodriguez returned to the hospital with this photographic array at approximately 2:05 P.M. on May 12.

Rodriguez, who was alone and in plain clothes, proceeded to Smith's room and awakened him for the purpose of showing him the photographs. Rodriguez explained to Smith that he had

[2]We acknowledge the amicus brief filed in support of the defendant by the New England Innocence Project.

developed a second suspect and that this second suspect's photograph was among the eight in the array that he wanted to show Smith. He asked Smith if he felt up to viewing them, and Smith responded that he "wanted to go forward." Although a little "under the weather" from having been awakened and from the effects of medication, Smith did not seem confused and he felt comfortable enough to continue. Rodriguez told Smith that if he recognized someone, then he should let Rodriguez know. Rodriguez displayed each of the eight photographs to Smith, one at a time, holding each one in front of Smith for ten to fifteen seconds. Smith pointed to the eighth photograph and said, "I think that's the guy right there." When Rodriguez asked if he was certain, Smith stated that he was "[a]bout ninety-five percent sure." The photograph that Smith identified was of the defendant. After Smith made the identification, Rodriguez dated and initialed the photograph. Although Rodriguez could understand Smith and Smith appeared to understand him, Rodriguez was not "completely comfortable" with the identification, knowing that Smith had just been awakened and seemed to be medicated.

Smith was discharged from the hospital on the evening of May 12. Based on his concerns about Smith's condition at the time of the first identification, Rodriguez made arrangements to visit him the following day.     approximately 7:15 A.M. on May 13, Rodriguez arrived at Smith's home. He showed Smith photographs of the vehicles and property that had been seized during the investigation. Rodriguez then showed Smith the same series of eight photographs of African-American males, one at a time, and asked Smith to tell him if he recognized anyone. Rodriguez did not mention that a photograph of the second suspect was included in the array.[3] On this occasion, Rodriguez changed the location of the defendant's photograph from the eighth position to the fourth position in the series. After looking at all of the photographs, Smith positively identified the fourth one, that of the defendant, as the second assailant. During this meeting with Rodriguez, Smith appeared to be more alert, attentive, and in better spirits than he had been while in the hospital.

The motion judge concluded that the defendant's motion to

---

[3]In his findings of fact, the motion judge inaccurately stated that during this identification on May 13, Rodriguez again explained to Smith that "the photograph of the second suspect was among [the array]."

suppress the photographic identification on the grounds that the procedure that Rodriguez used was impermissibly suggestive and conducive to a mistaken identification, thereby depriving the defendant of his rights under the Fourteenth Amendment and art. 12, should be denied. The judge stated that there was nothing about the photographic array itself or Rodriguez's display of the photographs that suggested which one Smith should select. Further, notwithstanding the fact that Smith was "lethargic" at the time of the initial array, he understood Rodriguez and agreed to review the photographs. After doing so, Smith identified the defendant and said that he was ninety-five per cent certain. The judge stated that while Smith's condition at the hospital and Rodriguez's lack of formal training specific to photographic identification procedures were fodder for cross-examination,[4] they did not render Smith's identification of the defendant as one of his assailants impermissibly suggestive.

2. *Suppression of identifications.* When reviewing the denial of a motion to suppress, we accept the judge's findings of fact and will not disturb them absent clear error. See *Commonwealth v. Gomes,* 453 Mass. 506, 508-509 (2009); *Commonwealth v. Jones,* 375 Mass. 349, 354 (1978). We make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found. See *Commonwealth v. Mercado,* 422 Mass. 367, 369 (1996). Questions of credibility are the province of the motion judge who had the opportunity to observe the witnesses. See *Commonwealth v. Martin,* 447 Mass. 274, 280 (2006).

For a motion to suppress a photographic identification to succeed, "the defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." *Commonwealth v. Miles,* 420 Mass. 67, 77 (1995).

---

[4]On cross-examination at the suppression hearing, Rodriguez, a thirteen-year veteran of the Springfield police department, testified that he had learned about identification procedures through "on-the-job training with seasoned officers." He was not aware of any written procedures of the Springfield police department for the administration of photographic arrays, and was not familiar with identification procedures recommended by the United States Department of Justice in its publication, Eyewitness Evidence: A Guide for Law Enforcement (1999).

See *Commonwealth* v. *Johnson*, 420 Mass. 458, 463-464 (1995); *Commonwealth* v. *Botelho*, 369 Mass. 860, 867 (1976). The question raised by a motion to suppress identification testimony is not whether the witness might have been mistaken, but whether any possible mistake was the product of improper suggestions by the police. See *Commonwealth* v. *Payne*, 426 Mass. 692, 694 n.3 (1998); *Commonwealth* v. *Paszko*, 391 Mass. 164, 172 (1984). Where an identification procedure is not impermissibly suggestive, a pretrial identification is admissible without any further showing. See *Commonwealth* v. *Warren*, 403 Mass. 137, 139 (1988). Conversely, if a defendant establishes that an identification procedure was unnecessarily suggestive, the prosecution may not offer that particular identification in evidence. See *Commonwealth* v. *Odware*, 429 Mass. 231, 235 (1999); *Commonwealth* v. *Botelho*, *supra* at 866.

The defendant here contends that the motion judge erred in refusing to suppress the evidence of Smith's pretrial identifications. He argues that Smith's identification of the defendant as a perpetrator of the crimes resulted from an unnecessarily suggestive photographic array and, therefore, violated his State and Federal due process rights. The defendant has set forth several reasons why the identification procedure that Rodriguez used was unnecessarily suggestive. We address each in turn, focusing initially on Smith's identification at the hospital on the afternoon of May 12, 2006.

First, in the defendant's view, the photographic array was unnecessarily suggestive not only because Rodriguez failed to advise Smith that the perpetrator's photograph might not be in the array, but also because Rodriguez told Smith that the array included the photograph of a suspect. The defendant asserts that when Rodriguez administered the photographic array, he should have followed the identification procedures recommended by the United States Department of Justice, Eyewitness Evidence: A Guide for Law Enforcement (1999) (DOJ Guidelines), and instructed Smith that (1) it was just as important to clear an innocent person from suspicion as to identify a guilty party; (2) the person who had committed the crimes might or might not be in the photographic array; and (3) the police would continue their investigation regardless of whether Smith made an identification. DOJ Guidelines, *supra* at 32. The defendant points out that the

Massachusetts District Attorneys Association supports the adoption of the DOJ Guidelines, and the Boston police department has incorporated the DOJ Guidelines into Rule 330 of the Rules and Procedures of the Boston Police Department, governing the collection and preservation of eyewitness identification evidence. Further, the defendant asserts that, in accordance with the DOJ Guidelines, Rodriguez should have advised Smith to "[t]ake as much time as needed in making a decision about each photo before moving to the next one." DOJ Guidelines, *supra* at 34.

Recently, in *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 795-796 (2009), decided after the trial in the present case, this court considered, among other things, whether the procedure used in several out-of-court photographic identifications was unnecessarily suggestive because the police did not "observe recognized procedures for guarding against error." We articulated a protocol to be used, going forward, so as to reduce the risks of unnecessary suggestiveness and misidentification when a photographic array is shown to an eyewitness.[5] See *id.* at 797-798. At the same time, we declined to hold "that the absence of any protocol or comparable warnings to the eyewitnesses requires that the identifications be found inadmissible." *Id.* at 798. We again decline to do so now, but we reiterate our expectation that the identification protocol set forth in *Commonwealth* v. *Silva-Santiago*, *supra* at 797-798, will be employed in the regular course of administering photographic arrays.

Our focus here is on whether the specific actions of Rodriguez at the hospital on May 12 subjected Smith to a confrontation that was unnecessarily suggestive. We agree with the motion judge that they did not. "A witness ordinarily expects to be

---

[5] "What is practicable in nearly all circumstances is a protocol to be employed before a photographic array is provided to an eyewitness, making clear to the eyewitness, at a minimum, that he will be asked to view a set of photographs; the alleged wrongdoer may or may not be in the photographs depicted in the array; it is just as important to clear a person from suspicion as to identify a person as the wrongdoer; individuals depicted in the photographs may not appear exactly as they did on the date of the incident because features such as weight, head, and facial hair are subject to change; regardless of whether an identification is made, the investigation will continue; and the procedure requires the administrator to ask the witness to state, in his or her own words, how certain he or she is of any identification." *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 797-798 (2009), citing United States Department of Justice, Eyewitness Evidence: A Guide for Law Enforcement 19, 31-32, 33-34 (1999).

asked to make an identification of someone who either fits the description of a suspect or is suspected to have been involved in the reported crime." *Commonwealth* v. *Phillips*, 452 Mass. 617, 628 (2008) (holding that identification procedure not unnecessarily suggestive where eyewitness may have heard on police radio that he was going to view suspect). See *Commonwealth* v. *Melvin*, 399 Mass. 201, 206 n.9 (1987) (officer's statement to victim that police had suspect did not render any subsequent identification unduly suggestive); *Commonwealth* v. *Williams*, 399 Mass. 60, 67 (1987) (notwithstanding officer's statement that he thought, "[W]e got the guys," one-on-one confrontation between suspect and victim in immediate aftermath of crime not impermissibly suggestive). Although it would have been better if Rodriguez had not told Smith that a suspect's photograph was included in the array, that statement did not render the identification procedure impermissibly suggestive. Moreover, there was no evidence that Rodriguez rushed Smith to make a decision, or gave any kind of indication that he should select a particular photograph.

Next, the defendant contends that the identification procedure was unnecessarily suggestive because Rodriguez, who was actively investigating the shooting incident, was the officer who administered the photographic array. We have acknowledged that it is the better practice to have an identification procedure administered by a law enforcement officer who does not know the identity of a suspect (double-blind procedure) in order to obviate the risk of suggestion. See *Commonwealth* v. *Silva-Santiago, supra* at 797. However, we have yet to hold that an identification procedure is unnecessarily suggestive merely because it is administered by an investigating officer, recognizing that it may not be practicable to use another unconnected officer in all situations, and we decline to reach that conclusion here. See *id.* Rodriguez knew that the defendant was a suspect, having placed his photograph in the array, but there is no evidence that he consciously or unconsciously conveyed that knowledge to Smith. Moreover, the absence of a double-blind procedure goes to the weight of the identification evidence, not its admissibility. See *id.,* citing *Commonwealth* v. *Odware*, 429 Mass. 231, 236 (1999).

Finally, the defendant asserts that the identification procedure at the hospital was unnecessarily suggestive because Rodriguez

knew that Smith was under the influence of pain medication. The judge was entitled to credit Rodriguez's testimony that although Smith was "groggy" and "lethargic" when the photographic array was administered, Smith understood Rodriguez, he felt up to viewing the photographs, and he indicated a desire to proceed with the identification. See *Commonwealth* v. *Martin*, 447 Mass. 274, 280 (2006). In these circumstances, Rodriguez's decision to continue with the identification did not render the procedure impermissibly suggestive.

Apart from the defendant's contention that the identification procedure that Rodriguez employed at the hospital on May 12 was unnecessarily suggestive, the defendant asserts that the judge improperly considered circumstances that were external to the photographic array itself. In particular, the defendant continues, the judge should not have considered Smith's expression of a ninety-five per cent certainty in his identification of the defendant as one of the assailants. The only issue before the motion judge was whether the procedures that Rodriguez employed "were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." *Commonwealth* v. *Miles*, 420 Mass. 67, 77 (1995). Relevant to the judge's determination of that issue was Smith's ability, while medically impaired, to view and consider the photographic array free from any influence by law enforcement officials. Smith's expression of a ninety-five per cent certainty in his identification was one factor among several that the judge could evaluate in deciding whether Rodriguez's actions may have been unduly suggestive. See *Commonwealth* v. *Martin, supra* at 278 n.2. Our conclusion in this regard is not contrary to the holding in *Commonwealth* v. *Johnson*, 420 Mass. 458, 465-472 (1995), that art. 12 requires per se exclusion of unnecessarily suggestive identification procedures without recourse to a secondary analysis of witness certainty or reliability. Here, Smith's certainty was not being considered in the context of a secondary analysis following a judicial determination that an identification procedure was impermissibly suggestive.

Based on the totality of the circumstances, the defendant has not shown by a preponderance of the evidence that the identification procedure that Rodriguez used at the hospital on May 12 was unnecessarily suggestive. We turn now to the identification that Smith made at his residence on May 13. If a defendant

sustains his burden of showing that a given identification was unnecessarily suggestive, then the Commonwealth may not introduce a subsequent identification by the same witness absent clear and convincing evidence that the subsequent identification had an independent source and was not merely the product of the prior suggestive confrontation. See *Commonwealth* v. *Johnson, supra* at 463; *Commonwealth* v. *Botelho,* 369 Mass. 860, 868 (1976). Here, the defendant contends that there was no independent basis for admitting Smith's subsequent identification in evidence.[6] In light of our conclusion that the initial identification procedure was not unnecessarily suggestive, the Commonwealth was not required to show that the subsequent identification had an independent source.[7] See *Commonwealth* v. *Johnson, supra*; *Commonwealth* v. *Miles, supra* at 78 n.9; *Commonwealth* v. *Botelho, supra.* We add that there was no evidence to compel a conclusion that the second identification on May 13 was unnecessarily suggestive. See *Commonwealth* v. *Dinkins,* 415 Mass. 715, 721 (1993) (where witness tentatively identified photograph of defendant on prior occasion, police acted reasonably in including defendant's photograph in subsequent array); *Commonwealth* v. *Scott,* 408 Mass. 811, 825-826 & n.15 (1990) (identification not unnecessarily suggestive where photographs of several individuals, including defendant, are repeated in arrays over period of several days).

The judge did not err in denying the defendant's motion to suppress photographic identifications. Smith's pretrial identifications were admissible in evidence without any further showing. See *Commonwealth* v. *Payne,* 426 Mass. 692, 694 n.3 (1998); *Commonwealth* v. *Warren,* 403 Mass. 137, 139 (1988).

---

[6]The focus of the hearing on the defendant's motion to suppress was the suggestiveness of Smith's initial identification at the hospital on May 12, not whether there was an independent basis for any subsequent identifications. The Commonwealth did not present any evidence regarding an independent source because the judge wanted to take it "one step at a time" and deal first with the suggestiveness issue. The defendant did not challenge this approach, merely asserting in his closing statement that the taint of the initial identification would render the second identification "fruit of the poisonous tree."

[7]Had we concluded that the first identification made in the hospital on May 12 was impermissibly suggestive, we would agree with the defendant that the second identification on May 13 could not be used to "bolster[]" the first identification so as to render it admissible. At that juncture, the Commonwealth would need to present clear and convincing evidence that the subsequent identification had an independent basis.

3. *Ineffective assistance of counsel.* The defendant contends that the judge erred in denying his motion for a new trial because his trial counsel was ineffective for failing to secure funds for an expert witness to challenge the reliability of Smith's identification, and for failing to request "cautionary" jury instructions regarding the unreliability of eyewitness identifications. As such, the defendant continues, the inaction of counsel in this regard created a substantial risk of a miscarriage of justice. We disagree.

Pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), a judge may allow a motion for a new trial "if it appears that justice may not have been done." We review a judge's decision on a postconviction motion for a new trial for abuse of discretion. See *Commonwealth* v. *Preston,* 393 Mass. 318, 324 (1984). Where a new trial motion is based on ineffective assistance of counsel, the familiar standard used to analyze such a claim is "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Donlan,* 436 Mass. 329, 333 (2002). See also *Strickland* v. *Washington,* 466 U.S. 668, 686 (1984) (ineffective assistance occurs when trial counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result"). The burden of proving entitlement to a new trial based on ineffective assistance of counsel rests on the defendant. See *Commonwealth* v. *Comita,* 441 Mass. 86, 90 (2004). A defendant must show that better work might have accomplished something material for the defense. See *Commonwealth* v. *Acevedo,* 446 Mass. 435, 442 (2006); *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). A strategic or tactical decision by counsel will not be considered ineffective assistance unless the decision was "manifestly unreasonable" when made. *Commonwealth* v. *Martin,* 427 Mass. 816, 822 (1998). See *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). Further, mere speculation, without more, is insufficient to establish ineffective representation. See *Commonwealth* v. *Duran,* 435 Mass. 97, 103 (2001).

a. *Expert witness funds.* Preliminarily, we point out that expert testimony concerning the reliability of eyewitness identification is not admissible as of right, but is left to the discretion of the trial judge. See *Commonwealth* v. *Kent K.,* 427 Mass. 754, 762 (1998); *Commonwealth* v. *Santoli,* 424 Mass. 837, 838 (1997). Pursuant to G. L. c. 261, § 27B, an indigent party may request payment by the Commonwealth of fees and costs associated with litigation, including funds to hire an expert witness on eyewitness identification. See *Commonwealth* v. *Zimmerman,* 441 Mass. 146, 152-153 (2004). In an affidavit in support of the defendant's motion for a new trial, trial counsel stated that when he was retained, the defendant was employed, and he indicated to counsel that he "would be able to put together some money for an expert through a combination of his employment and sale of a car." Counsel was not aware of any good faith basis for a claim of indigency. In the months leading up to trial, the defendant "dropped out of contact" with his attorney and repeatedly neglected to inform counsel about his ability to secure funds for an expert, notwithstanding counsel's multiple requests for such information.

Two to three weeks before trial, the defendant informed counsel that he had been unable to obtain the necessary funds. Counsel discussed with the defendant his increased confidence in the strength of the case, particularly his ability to demonstrate the unreliability of Smith's identification through cross-examination of Rodriguez. Accordingly, counsel decided not to petition the court for funds to retain an expert witness, as he continued to believe that the defendant would not qualify as indigent. We cannot conclude that counsel's efforts here demonstrated serious incompetency, inefficiency, or inattention to his client's case. To the contrary, counsel's actions were appropriate and consistent with a reasonable trial strategy. "It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success." *Commonwealth* v. *Clemente,* 452 Mass. 295, 327 (2008), cert. denied, 129 S. Ct. 1329 (2009), quoting *Commonwealth* v. *Howell,* 394 Mass. 654, 658 (1985).

Furthermore, counsel's decision to proceed without an expert witness was not manifestly unreasonable when made. At trial, defense counsel attacked Smith's identification of the defendant as one of the perpetrators. He focused the jury's attention on the

manner in which Rodriguez conducted the identification pro-
cedure, on Rodriguez's lack of formal educational training in
eyewitness identifications, and on his admitted ignorance of the
DOJ Guidelines. Trial counsel also challenged the reliability of
Smith's identification on cross-examination by suggesting that
the trauma of the incident impaired Smith's ability to remember
his assailants clearly, and that his identification of the defendant
was tainted by sleep and heavy medication. These themes were
repeated forcefully in defense counsel's closing argument. The
fact that the defendant ultimately was convicted of several crimes
did not render his attorney's strategy manifestly unreasonable.
See *Commonwealth* v. *Bol Choeurn*, 446 Mass. 510, 521 (2006)
(simply because trial strategy is unsuccessful does not render it
manifestly unreasonable). Cf. *Commonwealth* v. *Conceicao*, 388
Mass. 255, 265 (1983), quoting *Commonwealth* v. *Levia*, 385
Mass. 345, 354 (1982) ("where trial counsel did not move to
suppress the photographic identification but rather cross-examined
the witnesses extensively, and strenuously argued the weaknesses
of the identification testimony, trial counsel's actions may not be
characterized as 'manifestly unreasonable' ").

We add that, in ruling on the defendant's motion for a new
trial, the judge was not persuaded that, even if an expert witness
had been retained, such testimony necessarily would have been
admitted. Where there is additional evidence to corroborate an
eyewitness's identification, a judge does not overstep the bounds
of discretion in excluding expert testimony. See *Commonwealth*
v. *Bly*, 448 Mass. 473, 495-496 (2007); *Commonwealth* v. *Ash-
ley*, 427 Mass. 620, 623-624 (1998); *Commonwealth* v. *Santoli*,
*supra* at 841-844. Here, the judge pointed out that Clemmons
and the defendant were together in the defendant's SUV im-
mediately prior to the kidnapping. The SUV, which Smith identi-
fied as the one used in the kidnapping, also was identified by the
police officer who had stopped it for a traffic violation earlier in
the evening. That same officer later identified the defendant as
the driver and Clemmons as the passenger. Furthermore, Smith
was with Clemmons and the defendant for nearly two hours on
the evening in question; he had ample opportunity to observe the
defendant before his eyes were taped, and again when they sub-
sequently engaged in hand-to-hand combat. In light of the sub-
stantial evidence against the defendant, the judge properly

concluded that it would not have been an abuse of his discretion to exclude expert testimony on eyewitness identification had such testimony been proposed by defense counsel.

The defendant has not satisfied his burden of establishing that his trial counsel was ineffective for failing to seek funds for an expert witness to challenge the reliability of Smith's identification. Accordingly, the judge did not abuse his discretion in denying the defendant's motion for a new trial on this basis.

b. *Jury instructions on mistaken identification.* The defendant next argues that the judge erred in denying his motion for a new trial where his trial counsel failed to request "cautionary" jury instructions regarding the unreliability of eyewitness identifications. The defendant contends that the jury could not assess fully the reliability of Smith's pretrial identifications in the absence of an instruction that the procedure that Rodriguez used, which did not conform with DOJ Guidelines, increased the risk of a misidentification. We disagree.

It is well settled that a judge need not give "a particular instruction so long as the charge, as a whole, adequately covers the issue." *Commonwealth* v. *Cruz*, 445 Mass. 589, 597 (2005), quoting *Commonwealth* v. *Daye*, 411 Mass. 719, 739 (1992). In his instructions here, the judge described various factors that the jury should consider in assessing the Commonwealth's identification evidence, including Smith's capacity and opportunity to observe the perpetrator, whether Smith's identification was the product of his own recollection, the manner by which Smith made the identification, the possibility that Smith could be lying, and the presence of other factors that could have influenced the identification. Further, the jury were told that the Commonwealth bore the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crimes charged. Defense counsel requested, and the judge gave, an "honest, good-faith mistaken identity instruction" consistent with *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 302 (1979) (requiring judge to instruct jury that witness "might honestly have been mistaken" in identification), and *Commonwealth* v. *Pressley*, 390 Mass. 617, 619 (1983) (requiring judge to give "good faith error" instruction in appropriate circumstances). See *Commonwealth* v. *Pires*, 453 Mass. 66, 71-72 (2009). Defense counsel stated that he was satisfied with the jury instructions. We conclude that the judge's

instructions clearly apprised the jury of the identification issue. See *id.*; *Commonwealth* v. *Conceicao, supra* at 265-266; *Commonwealth* v. *DeJesus*, 71 Mass. App. Ct. 799, 808 (2008). No further instructions were necessary. Accordingly, the judge did not abuse his discretion in denying the defendant's motion for a new trial on the ground that his attorney failed to request "cautionary" instructions on misidentification.[8]

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*

---

[8]We decline the defendant's invitation to mandate the admission of expert testimony and the giving of "cautionary" jury instructions when the reliability of a witness's identification is called into question because the DOJ Guidelines were not strictly implemented by law enforcement officials during the identification procedure. A judge may choose to do so in a particular case. The protocol recently announced in *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 796-797 (2009), designed to reduce the risks of suggestiveness, coupled with our established case law regarding jury instructions on mistaken identification are sufficient, at this juncture, to protect a defendant from wrongful conviction based on eyewitness misidentification.